Selden, J.
 

 Although this is an action of a very trivial nature, in respect to the amount which it involves, it nevertheless embraces • principles of very considerable importance, and should, therefore, be carefully considered. It was clearly established upon the trial that, at the time when the plaintiff purchased and took a conveyance from Chesebro, the'stream in • question, instead of running in its original channel, through the entire length and across the south line of the plaintiff’s lot, had been turned through an artificial channel across the north line on to the other portions of the forty acres, and thence into Elk creek; thus leaving the whole of the southern portion of the plaintiff’s lot, upon which he subsequently built his house and barn, dry and free from the incumbrance of the stream, which had originally spread over a considerable portion of the lot. It did not distinctly appear how long the stream had run in this artificial channel prior to the conveyance of the lot by Chesebro, nor do I deem this of any importance. It was several months, at least. The question is, whether, after conveying this lot and its appurtenances to the plaintiff, with the stream then running in the artificial channel on to adjoining premises of his own, either he or his grantees would have a right after-wards to. obstruct this channel, and turn the water back through . its original course across the entire lot.
 

 The owner of real estate has, during his ownership, entire dominion ánd control over' its various natural qualities, and may dispose of and arrange them at will. He may alter the
 
 *507
 
 natural distribution of those qualities, so as essentially to change the relative value of the different parts; and may, in a great variety of ways, make one portion of the premises subservient to another. The precise question in this case is, whether an owner, who, by such an artificial arrangement of the material properties of his estate, has added to the advantages and enhanced the value of one portion, can, after selling that portion with those advantages openly and visibly attached, voluntarily break up the arrangement, and thus destroy or materially diminish the value of the portion sold.
 

 The rule of the common law on this subject is well settled.' The principle is, that where the owner of two tenements sells one of them, or the owner of an entire estate sells a portion, the purchaser takes the tenement, or. portion sold, with all the benefits and burdens which appear, at the time of the sale, to belong to it, as between it and the property which the vendor retains. This is one of the recognized modes by which an easement or servitude is created. Ho easement exists so long as there is a unity of ownership, because the owner of the whole may, at any time, rearrange the qualities of the several parts. But the moment a severance occurs, by the sale of a part, the right of the owner to redistribute the properties of the respective portions ceases; and easements or servitudes are created, corresponding to the benefits and burdens mutually existing at the .time of the sale. This is not a rule for the benefit of purchasers only, but is entirely reciprocal. Hence, if, instead of a benefit conferred, a burden has been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with the servitude upon it. The parties are presumed to contract in reference to the condition of the property at the time of the1 sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts.
 

 These principles are so obviously just, that we might be warranted in applying $hem to the present case for that reason alone. But they are also sustained by ample authority. The
 
 *508
 
 oldest case on the subject appears to be that of Coppy, 11 Henry VII, 25, cited from the Year Books by Gale and Whately, in their work on Basements, page 41. That was an action on the case for stopping a gutter .running from the building of the plaintiff over the adjoining building of the defendant. The plea was, that, within the time of memory, both buildings had belonged to the same individual, who had sold one of them to the plaintiff and the other to the defendant; and that the easement, if it ever existed, was extinguished by this unity of ownership. But the court held'this to be no defence. It was, however, conceded that if the owner of both tenements, before selling either, had destroyed the gutter, and then sold, the gutter could not have been restored. This case was identical in principle with the present, and fully sustains what has been here said. It shows that,' if the owner of an entire property wishes to put an end to a burden, which has been imposed upon one portion for the benefit of another, he must do so before he sells the portion benefited.
 

 But the leading case, and the one which has always been regarded as settling the law upon this subject, is,
 
 Nicholas
 
 v.
 
 Chamberlain (C
 
 ro. Jac., 121), in which, to use the language of Croke, “ It was held by all the court, upon demurrer, that, if one erect a house, and build a conduit thereto, in another part of his land, and convey water by pipes to the house, and afterwards sell the house with the appurtenances, excepting the land, or sell the land to another, reserving to himself the house, the conduit and pipes pass with the house, because it is necessary and
 
 quasi
 
 appendant thereto; and he shall have liberty by law to dig in the land for amending the pipes, or making them new, as the case may require.” The authority of this case has never been shaken, but, on the contrary, it has been referred to with approbation, in all the subsequent cases in which this question has been involved.
 

 The same doctrine was laid down in the case of
 
 Robbins
 
 v.
 
 Barnes
 
 (Hob., 131). It was there held, that when one of two adjoining houses was originally built,in such a manner that one overhung a portion of the other, although this overhang
 
 *509
 
 ing was originally wrongful, yet if both houses should come afterwards to be owned by one individual, and he should sell them to different persons without alteration, the purchaser of the overhanging house would thereby acquire a right to maintain his house in that condition, and .when it decayed to pull it down and build another of the same description. But the court at the same time? held, that although the overhanging was at first rightful, yet if one, owning both houses at the same time, had removed the overhanging portion, and then sold to different persons, the overhanging could never be renewed; because the houses, as the court say, “ must be taken as they were at the time of the conveyance.” The whole principle is contained in the few words here quoted.
 

 There are several American cases holding the same doctrine. The first to which I shall refer is that of New
 
 Ipswich Factory
 
 v.
 
 Batcheldor
 
 (3 N. H., 190). A tract of land had been con veyed by metes and bounds, having upon it a mill; and, at the time of the conveyance, there was a raceway to conduct the water from the mill, running along the side of the natural stream beyond the bounds of the land granted into other lands of the grantor, and then discharging the water into the natural stream. The court held, that a right to have the water flow off uninterruptedly, through the whole extent of the raceway, passed as appurtenant to the mill. It has been suggested that the decision in this case was produced by the peculiar phraseology of the deed, which mentioned “ water privileges and all other privileges annexed to or belonging to said premises but no stress is laid upon this language by the court in deciding the case. On the contrary, it is put expressly upon the principle of the case of
 
 Nicholas
 
 v.
 
 Chamberlain.
 
 The Chief Justice quotes that case at length, and then says: “ The rule here laid down seems to be founded in sound reason and good sense, and to apply, in all its force, to the case now before us.”
 

 Another case, equally in point, is that of
 
 United States
 
 v.
 
 Appleton
 
 (1 Sumner, 492). A block of buildings was erected in Boston, in 1808, consisting of a central building and two wings, with a piazza in front of the central building, and side
 
 *510
 
 doors in the wings, which opened on and swung over the piazZa, the upper parts of which were used as windows. The wings were conveyed in 1811 to different' parties, without mentioning the side doors, and in 1816 the central building was sold to the United States. It was held that the use of the side doors and windows passed as appurtenances, without any reference to the length of time during which they had been used. In this case, also, the case of
 
 Nicholas
 
 v.
 
 Chamberlain (supra)
 
 was referred to and relied upon by Judge Story. The same judge has also fully recognized the doctrine, in the previous case of
 
 Hazard
 
 v.
 
 Robinson
 
 (3 Mason, 272).
 

 I shall not cite that large class of cases in which various privileges and easements have been held to pass as appurtenances, where the conveyance uses some comprehensive word, such as manor, messuage, farm, mill, and.the like, as descriptive of the whole subject of the grant, because those cases are explained upon the ground that all the privileges in use, as parts of the thing conveyed, are virtually included in the general designation of the thing as a whole. This criticism, however, has no application to the cases already cited, nor to that to which I will next refer, namely,
 
 Thayer
 
 v.
 
 Payne
 
 (2 Cush., 327). The plaintiff and defendant were the owners and occupants- of adjoining lots of land, the defendant having derived his title from the plaintiff. At the time of the conveyance from the plaintiff to the defendant, there was a drain from the defendant’s cellar leading through the plaintiff ’s premises to an outlet beyond. This drain was not mentioned in the deed. The drain being out of repair, the defendant entered upon the premises of the plaintiff for the purpose of opening it; and for this entry the action was brought. It was held that the defendant had a right to maintain the drain, and to enter upon the plaintiff’s premises for the purpose of repairing it, notwithstanding the deed contained the following clause: “ To have and to hold the aforegranted premises, with the privileges and appurtenances thereto belonging, at the time of the purchase .thereof by the said Thayer and Frenchand, notwithstanding it appeared that the drain had no. existence at the time referred
 
 *511
 
 to in this clause, it having been constructed afterwards, but before the conveyance to the defendant. The decision was put upon the ground that, as the plaintiff owned both lots at the time of his conveyance to the defendant, and as the drain was then in existence and use, it passed as an appurtenance without being mentioned, and without even the use of the word appurtenances; and, hence, it could not be affected by the clause in the deed. It is hardly possible to conceive of a stronger case than this, for the support of the principles here advanced.
 

 There are one or two other classes of cases, which, by the distinctions "they involve", present the principles upon which this case depends in so clear a light, that it may be well to advert to them. One of these classes comprises those cases which relate to the obstruction of windows. It is well settled, that, as a general rule, if the owner of a building has windows overlooking an adjoining lot, the owner of the latter may build directly in front of the windows so as entirely to obstruct their light, unless they are shown to be
 
 ancient.
 
 If,- however, both proprietors obtained their title from a common source, the same grantor having conveyed the tenement with the windows to one, and the ground overlooked to another, the windows cannot be obstructed; and the reason is, that the relative qualities of the two tenements must be considered as fixed at the time of their severance, each retains, as between it and the other, the properties then visibly attached to it, and neither party has a right afterwards to change them. These principles are distinctly stated in a very early case, viz.,
 
 Cox
 
 v.
 
 Matthews
 
 (Ventris, 237), which was an action for stopping lights. Lord Hale laid down the rule in this case as follows: “ That if a man builds a house upon his own ground, he that hath the contiguous ground may build upon it also, though he doth thereby stop the lights of the other house; for,
 
 eujus est
 
 solum,
 
 ej'us es usque ad ccelum;
 
 and this holds, unless there be a custom to the contrary, as in London. But in an action for stopping of his light, a man need not declare of an ancient house; for if a man ■should build an house on his own ground, and then grant the
 
 *512
 
 house to A, and grant certain land adjoining to B, B could.not build to the stopping of its lights in that case.”
 

 The first portion of the rule here laid down, although well established in England, has not been adopted in this State; but, on the contrary, was expressly rejected, in the case of
 
 Parker
 
 v.
 
 Foote
 
 (19 Wend., 309), for the reasons there given. This decision, however, has no bearing upon the doctrine, that, if a man builds a house, at the same time owning both the site of the house and the adjoining land, and then sells the house, neither he nor his grantees can afterwards build upon the vacant ground so as to obstruct the windows of the house.
 

 I will refer to one. or two of the cases on this latter branch of the rule, laid down by Lord Hale in
 
 Cox
 
 v. Matthews, for the purpose of showing that the principle upon which they rest is identical with that involved in the present case.
 

 '
 
 Palmer
 
 v.'
 
 Fletcher
 
 (1 Lev., 122, 1 Sid., 167, S. 0.), was an action for stopping lights. It appeared that the owner of land erected a house upon it, and, after selling the house to one, sold the vacant ground to another, who obstructed the windows of the house. The court held that neither the builder of the house himself, nor any one claiming under him, had a right to build upon the vacant ground so as to interfere with the existing windows, giving, as a reason, that the grantor of the house could not derogate from his own grant. Kelynge, J., however, said, that if the vacant ground had been sold first, and the house afterwards, the purchaser of the ground might then have stopped the lights; but Twisdem, J., denied this, saying that, “ whether the land be sold first or afterwards, the vendor of the land cannot stop the lights of the house, in the hands of the vendor or his assignees; and cites a case to be so adjudged.”
 

 If we consider the reason of the rule, we shall see at once that, in this conflict of opinion, Mr. Justice Twisdeh was clearly right. The principle is that so concisely stated in
 
 Robbins
 
 v.
 
 Barnes (supra),
 
 that, upon the severance of two tenements belonging to the same owner, by the conveyance of one of both, they must be taken as they were at the time of the
 
 *513
 
 conveyance. If, therefore, the owner retains the tenement benefited, and sells that upon which the burden has been imposed, the purchaser takes the latter with the burden or servitude annexed. The time during which the lights have been enjoyed, has nothing .to do with the rule in these cases. Whether they have existed for twenty years, or for a single .day, they are equally protected. The doctrine has been adhered to in all the later English cases.
 
 (Riviere
 
 v. Bower, Ry. & Mo., 24;
 
 Compton
 
 v. Richards, 1 Price, 27;
 
 Coutts
 
 v. Graham, 1 Mo. & Mal., 396.)
 

 I will refer, upon this point, to but a single American case, viz.,
 
 Story
 
 v.
 
 Odin
 
 (12 Mass., 157). This was an action for stopping lights not alleged to be
 
 ancient.
 
 The essential facts of the case, and the point of the decision, are very clearly stated in the following extract from the opinion of Jackson, J.: “The town of Boston, in the year 1795, owned the two pieces of land now owned by the plaintiff and defendant. They then sold to the plaintiff the piece now owned by him. This piece then had upon it a building, like that afterwards erected by the plaintiff upon the same foundations, and with doors and windows corresponding to those in the new building.
 
 This grant being without any
 
 exception,
 
 or any reservation of a right to build upon the adjoining
 
 ground,
 
 or to stop the lights in the building which they
 
 sold, it is clear that the grantors themselves could not afterwards lawfully stop those lights, and thus defeat prim pair their own grant. As they could not do this themselves, so neither could they convey a right to do it to a stranger. No lapse of time was necessary to confirm this right to the plaintiff.”
 

 This case, is important, because it expressly shows that the court considered the question, whether it is incumbent upon the purchaser to secure, by covenant, existing benefits not naturally belonging to the tenement purchased, but previously conferred upon it at the expense of other lands of the grantor; or whether the grantor must himself guard against transferring the right to such benefits. The conclusion, as we have seen, was, that such benefits remain attached to the tenement conveyed, unless the right -to subvert them is expressly reserved.
 

 
 *514
 
 There is still another class of cases which illustrate and support the same doctrine. If a man has a house standing directly upon the line of his lot, he has,, in general, no remedy against the owner of the adjoining ground, who, by excavating upon his own land, has weakened the foundation of the house so as to cause it to fall. So, also, if the house is partially supported by a building upon the adjoining lot, the owner of the latter building may pull it down, although, in consequence of its removal, the house should fall. If, however, the house and the adjoining premises have both belonged to the same individual at any time subsequent. to the building of the house, the owner of the house would, upon the severance of the two tenements, have acquired a right to all the support at that time afforded by the adjoining premises. The cases on this subject are numerous, but I will refer to two only.
 

 Peyton
 
 v.
 
 The Mayor, &c., of London
 
 (9 Barn. & Cres., 725), was an action on the case to recover damages for pulling down an adjoining house, in consequence of which the plaintiff’s house was impaired and partly fell. It was held, that, as the plaintiff had not alleged or proved any right to have his house supported by the defendant’s, he was bound to protect himself by shoring. It was, however, impliedly conceded, that, if the houses had been built or owned by the same person, and after-wards passed into different hands, such a right would have existed. Lord Tenterdeh, in giving his reasons for the decision, says: “ It did not appear whether the two houses had been erected at the same time, or at different times: from their construction, it seems likely that they were built at or about the same time. The freehold was then in different hands: and as the governors of the hospital (the defendants) are not likely to have bought or sold in modern times, it is probable that the freehold was also
 
 in different hands
 
 when the houses were built.” This seems plainly to imply, that, if the houses had been in the same hands when built, an easement, or right to support, would have existed.
 

 Chancellor Walworth, in the case of
 
 Lasala
 
 v.
 
 Holbrook
 
 (4 Paige, 169), adverts to the same distinction. The object of
 
 *515
 
 the action there was to obtain an injunction, restraining the defendants from excavating upon their own lot in Ann street, in the city of Mew York, so as to endanger the walls of a church standing upon the adjoining lot. The object of the defendants, in excavating, was to erect' a building upon their lot. It was held, that, if a person, in excavating for the improvement of his own lot, digs so near the foundation of a house on an adjoining lot as to cause it to settle or fell, he will not be liable for the injury if he has exercised ordinary care and skill in making the excavation. But the Chancellor said: “ There is another class of cases, however, where the owner of the building on the adjacent lot is entitled to full protection against the consequences of any new excavation, or alteration of the premises intended to be improved, by which he may be in any way prejudiced. These are ancient buildings, or those which have been erected upon ancient foundations, and which, by prescription, are entitled to the special privilege of being exempted from the. consequences of the spirit of reform operating upon the owners of the adjoining lots;
 
 and also those luhich have been granted in their present situation by the owners of such adjacent
 
 lots,
 
 or by those under whom they have derived their title."
 
 It will be seen, therefore, that there is an entire concurrence in principle among all the various classes of cases to which I have referred.
 

 There is one other distinction, having a direct bearing upon this question, not yet adverted to. It is not every species of easement which passes as a matter of course by the conveyance of one of two tenements, or part of a single tenement, by the owner of both or the whole. Basements, or servitudes, are divided by the civil code of France into continuous and discontinuous. , Continuous are defined to be those, of which the enjoyment is, or may be, continual, without the necessity of any actual interference by man; as a water-spout, or right to light or air. Discontinuous are those, the enjoyment of which can be had only by the interference of man; as rights of way, or a right to draw water.
 

 Servitudes are also divided, by the same code, into “ apparent” and “mon-apparent.” The analogy between the common
 
 *516
 
 law and .the French code, in this respect, would seem to indicate, as suggested by Messrs. Gale & Whately, a common origin. The substance of those divisions may be distinctly traced in the common law cases; and it will be found, that those easements which, according to this classification, are termed discontinuous, pass upon a severance of tenements by the owner only when they are absolutely necessary to the enjoyment of the property conveyed. Gale & Whately, after stating the grounds upon which easements are held to pass in such cases, says:
 
 “
 
 This reasoning .applies to those easements only which are attended by some alteration which is, in its nature,
 
 obvious and permanent;
 
 or, in technical language, to those easements only which are apparent and continuous; understanding, by apparent signs, not those which must
 
 necessarily
 
 be seen, but those which
 
 may be
 
 seen or known, on a careful inspection by a person ordinarily conversant with the subject.” (Gale & Whately on Easements, p. 40.)
 

 This distinction may serve to explain a few of the cases, particularly in Massachusetts, which might otherwise seem to be in conflict with the numerous cases which have been cited. In the present case, the servitude was not only permanent, but perfectly obvious and apparent, at the time of the conveyance to the plaintiff, and must, therefore, according to all the authorities, have passed by the deed.
 

 The judgment should, therefore, be reversed, and there should be a new trial, with costs to abide the event.
 

 All the judges concurring,
 

 Judgment reversed, and new trial ordered.