EDWARD SIMMONS, et al., Respondents *v.* THOMAS CLOONAN AND THE TRUSTEES OF THE VILLAGE OF RONDOUT, Appellants.

(GENERAL TERM, THIRD DISTRICT, MARCH, 1870.)

In 1849, the owners of certain agricultural lands built an embankment thereon as a highway, and also to dam a stream running through the premises, and thereby create a reservoir to supply water by means of a culvert under the embankment, to a mill further down the course of the stream, occupied under them by one B. In March, 1850, the owners conveyed to B. the mill premises with the privilege of using "the reservoir dam," and in June, of the same year, contracted with him to sell and convey, with possession until conveyance, other premises lying along the bank between the mill site and the down stream side of the culvert. B. took possession of, and in 1852 built a new mill on the premises described in the contract, which he operated with the said owner's knowledge by water supplied from the reservoir through the culvert by means of a wooden flume therefrom, and soon after abandoned the use of the old mill. In 1853, while the new mill was so in operation, the said owners conveyed the premises described in their contract with B., together "with the appurtenances," to his assignee, with covenants of warranty, and in 1867 they conveyed the land covered by the reservoir to the defendant, C.—*Held*, that a right to use the waters from the reservoir passed by the grant to B.'s assignee, and C. was perpetually restrained, in a suit against him and the commissioners of highways, brought by one having title through such assignee, from destroying the reservoir, or diminishing the supply of water, or interfering with its flow upon the plaintiff's premises.

Nor could C. claim on appeal in such suit, authority from the commissioners of highways to interfere with the plaintiffs' rights in the reservoir, he having interposed as a defence a personal right, no separate motion having been made for nonsuit, &c., at the trial, on behalf of the commissioners, and no evidence having been given of steps taken by the commissioners, as such, respecting such interference.

THIS action was brought by the plaintiffs to prevent by injunction the destruction of a water privilege attached to their mill. The mill site was purchased by the agreement and conveyance mentioned in the referee's report, hereinafter set forth, for the sum of $500, and, with the improvements made after the purchase, and the water privileges, was worth $12,000. The cause was tried before a referee who found the following facts, viz :

"Previous to 1848 or 1849, Jansen Hasbrouck and Gabriel W. Ludlum, under a trust deed from Abraham Hasbrouck, were the owners of the land on both sides of the treet in the village of Rondout, called Hasbrouck avenue, as the same is now located, for nearly its entire length, including the premises on which the plaintiffs' mill now stands, and the premises of the defendant, Cloonan, where the pond or reservoir now is.

"For the purpose of bringing the property into market for village lots, in 1849 or 1850, they took measures to have Hasbrouck avenue laid out, and employed Elihu Brown to construct it. Before this the land was used for agricultural purposes.

"They had only two objects in view in the construction of Hasbrouck avenue; it was constructed as a road (thus bringing the property into market for village lots as aforesaid) and also for the purpose (being the only other object) of making a reservoir for the old mill property at the corner of Hasbrouck avenue and Mill street, on which what is called 'the old mill,' being the 'mill lower down the stream' hereinafter mention, and had been standing for many years; and said reservoir was used solely for the purpose of supplying the old mill with water until Brown abandoned such mill as hereininafter stated. No agreement was ever made with Brown that the reservoir might be used for any other purpose, and there was no agreement with Brown by which the new mill (the plaintiffs' mill), was to be substituted for the old mill in respect of the water privileges enjoyed by the old mill.

"In constructing the roadway of Hasbrouck avenue an

embankment was raised across a natural stream of water, flowing through the premises upon which the plaintiffs' mill has since been erected, and a pond or reservoir was formed on the opposite side of the street. A culvert was constructed ted across Hasbrouck avenue beneath the surface of the street from this reservoir or pond to the opposite side of the street, so that the water could be used for a mill lower down the stream, which was then owned by Jansen Hasbrouck and occupied by Brown as a lime and grist mill under a contract from Hasbrouck.

"The culvert is built of wood and is about thirty feet in length, ten feet deep, and six or eight feet wide; over it is a bridge, also of wood.

" The plaintiffs take the water from the culvert at its termination on the southerly side of Hasbrouck avenue, and lead it by a wooden raceway to their mill. The raceway is about two feet wide and eighteen inches high.

" On the 1st of June, 1850, Jansen Hasbrouck, having become the owner of the property on Hasbrouck avenue, which had belonged to him with Ludlum, as trustees, entered into a written contract with the said Elihu Brown to sell and convey to him the premises described in the complaint, and Brown entered into the possession thereof; and in 1851 or 1852 built the mill now owned by the plaintiffs and commenced operating it as a lime mill by water, using the water from the reservoir that had been formed by the construction of Hasbrouck avenue. Brown, shortly after he commenced operating this mill, abandoned the old mill lower down the stream.

" On the 1st day of July, 1853, Jansen Hasbrouck, at Brown's request, conveyed the premises agreed to be sold to Brown as above stated, to Joseph S. Smith, to whom Brown had assigned the contracts. This conveyance contains covenants of warranty and conveys the premises as described in the contract, ' with the appurtenances.'

" At that time the mill was in operation, and using the water from the reservoir through the culvert constructed across Has-

Simmons *v.* Cloonan.

brouck avenue under the surface of the street, as the same now is.  Hasbrouck was then the owner of the land on the opposite side of the street, including the reservoir.

" The plaintiff, Simmons, subsequently acquired the legal title to the lot in question, and entered into copartnership with the plaintiff, Gross, for the manufacture of lime in said mill, using the water from the pond or reservoir for such purpose.  The plaintiffs were so engaged as copartners at the time of the commencement of this suit.

" The premises, with the right enjoyed of using the water from the reservoir, are worth about $12,000 ; if deprived of that right, their value would be greatly lessened.

" On the 1st of March, 1850, Jansen Hasbrouck conveyed to Elihu Brown the ' old mill ' and lot, in which conveyance the privilege to use ' the reservoir dam ' is granted for the purposes of the old mill.  The old mill was burned down in 1854, and the site has not since been used for a mill.  The pond has been filled up and there is now no pond connecting with it except the reservoir pond above, formed by the construction of Hasbrouck avenue.

"On the 13th of November, 1867, Jansen Hasbrouck conveyed with covenants of warranty, to the defendant, Thomas Cloonan, the land covered by the pond or reservoir.  Shortly after his purchase Cloonan went to the plaintiff, Gross, and informed him of his purchase, and told him he should not use the water from the pond.  Gross told Cloonan that he must not interfere with the water rights of the plaintiffs or fill up the pond ; and if he did, that the plaintiffs would assert their rights to the use of the water by law.  Afterward, on the 23d or 24th of January, 1868, Cloonan came with men and hoisted the gate of the dam and let off the water.  He commenced filling up the pond along side of the gate with dirt and rubbish and stones, and set men working on the south side of the street on the plaintiffs' premises, under the flume or culvert, removing heavy stones which had been placed there to prevent the washing out of the earth, &c.  Cloonan also stated to Gross that he had been

employed by the trustees of the village of Rondout to build a sewer there.

" The trustees of the village of Rondout are a corporation duly organized under the laws of this State, and had made an agreement with Cloonan to repair the sewer at the point spoken of."

The referee also found the following conclusions of law:

"1st. That by the deed from Jansen Hasbrouck to Joseph S. Smith, whose title the plaintiffs hold to the premises described in the complaint, the right to use the water from the reservoir passed to the grantee as appurtenant to the grant, and still belongs to it.

" 2d. That the plaintiffs are entitled to an injunction perpetually restraining the defendants from destroying the reservoir, or doing any act that will materially diminish the supply of water, or that will interfere with the flow thereof upon the plaintiffs' premises.

" 3d. That the plaintiffs are entitled to their costs of this action against the defendants."

The defendants, separately, duly excepted to the decisions of the referee. A case was settled, judgment was entered upon the referee's report, and the defendants appealed to this court.

*Lawton & Stebbins*, for the appellants.

*William Lounsbery*, for the respondents.

Present—HOGEBOOM, PECKHAM and MILLER, JJ.

By the Court—MILLER, J. By the contract entered into between Hasbrouck and Brown, the former agreed to convey to the latter the premises described in the complaint. Brown entered into the possession under the agreement, built a mill, which he operated, using the water which had been provided by Hasbrouck by the construction of Hasbrouck avenue; and after this was done the deed was executed to Brown's assignee.

This conveyance merged all prior cotemporaneous agreements which had been made, and it is evident that Brown bought the premises intending to use them for milling purposes, and that Hasbrouck knew of the purposes for which they were designed and had been used. The deed conveyed the premises, together "with the appurtenances;" and although no water privilege is particularly mentioned, yet I think, in view of the surrounding facts and circumstances, the conveyance must be construed to include all such privileges in regard to the water as naturally and necessarily were connected with the premises. Brown also owned the old mill, lower down the stream, for the purpose of supplying which in part the reservoir had been constructed and was used until he abandoned it; and although Brown knew, at the time of making the contract, that the reservoir was used for the old mill and the water privileges were to cease and revert to Hasbrouck if not used, in my opinion that fact does not deprive the plaintiffs of the rights and privileges which the deed may fairly be construed to convey; nor of the inference to be drawn from it, that it conveyed everything which related to or in any way affected the value of the premises, I do not think that it can fairly be claimed that the water rights which arose from the reservoir itself, which might be otherwise available for the purposes of the new mill, were confined alone to the old mill, and that the abandonment or discontinuance of the latter would cut off and prevent the use of the water which flowed from this source for the benefit of the stream. This clearly was one of the benefits existing at the time which followed the conveyance of the property and passed with the title of the land itself. The principle is well settled, that in such cases a deed from the owner conveys all the benefits which belong to the property as between that which is conveyed and property which is retained. The doctrine is fully discussed in *Lampman* v. *Milks* (21 N. Y., 505), and it is said in the learned and able opinion of SELDEN, J.: "That where the owner of tenements sells one of them, or the owner of an entire estate sells a portion, the purchaser

takes the tenement or portion sold with all the benefits and burdens which appear at the time of sale to belong to it as between it and the property which the vendor retains." At the time when the deed of the premises in question was executed the reservoir was in existence, and the water from it had been taken from the culvert, which had been erected by Hasbrouck, and used by the plaintiffs for their mill; and it must be considered, I think, as a one of the benefits which belonged to, and which was to be derived from the sale, as between the property sold and that which remained.

The learned judge, in the same case, also says : " The parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts." The fact that the reservoir, and the water arising from it, had been used for the benefit of the plaintiff's mill, are presumed to have been taken into consideration at the time of the sale, and if these are to be disregarded and overlooked, it is apparent that the value of the property would be seriously affected, and the vendee deprived of one of the most important and essential elements of value to real estate of this character. The reservoir was in existence at 'the time the . contract of sale was entered into between the parties, and the mill site would be of no account without the water privilege attached to it. The case cited, covers entirely the principle involved in the one at bar, and I think, is decisive. It is enough, I think, that the water privilege was the principal element which constituted the value of the property, and that the mill was built, and the water used, when the conveyance was made by Hasbrouck to Smith. This conveyance was a sale of all the privileges and benefits existing at the time, which were known to the grantor.

I think that there is no force in the position, that the assignee of the contract was the equitable owner, and that Hasbrouck only had a lien for the unpaid portion of the purchase money. The title did not become perfect until the

Simmons *v.* Cloonan.

conveyance, and had it been intended to convey the premises with reservations, they should have been specified. Evidently, the grantor had knowledge of the large expenditure made for improvements, and of the rights which had been enjoyed from the reservoir unrestricted; and he is not in a position to assert, that his deed did not convey all that would naturally belong to the premises.

It is urged, that the trustees of the village of Rondout were acting in pursuance of a special statutory power, to construct or repair the sewer, and also in discharge of an absolute duty, as commissioners of highways of the village, and that Cloonan is protected under such power and duty. Cloonan in his answer, alleges title, and claims under that title. He sets up a right to fill up the pond, so far as the same covers his land, and to appropriate the land to his own use. He stated his intention to one of the plaintiffs, to build a sewer to carry off the water from the pond, and to fill it up for lots, thus stopping the use of the mill, and greatly impairing its value. These declarations evince, that he did not claim to defend himself, under the authority of the trustees of the village, and are binding upon him.

As to the trustees, it does not appear that a separate motion was made on their behalf for a nonsuit, nor any claim to disconnect themselves from the acts of Cloonan. Nor was there any evidence to establish that a sewer was required for the use of the village or that any legal steps had been taken for the construction of it, nor that the act done was authorized as commissioners of highways.

I have examined the objections made to the admission of evidence, and I think that none of them are well taken. They do not require discussion.

There was no error upon the trial before the referee, and the judgment must be affirmed with costs.

Judgment affirmed.