## N. Y. COMMON PLEAS.

### HAMEL agt. GRIFFITH and others.

*Motion for injunction to restrain the cutting off or obstructing drainage of dwelling-houses.*

Where a common owner of three adjoining dwelling-houses, two of which
are drained into the street through drain pipes connecting with those in
the third house, sells the two first houses without any reservation or
reference to the drainage thereof, and retains the third house, he will be
enjoined from cutting off or otherwise interfering injuriously the drains
of the two houses sold, which connect with his house under its cellar,
and then lead to the street.

*At Chambers, August,* 1875.

THE defendant Griffith, in 1873, was owner of three houses
and lots, Nos. 558, 560 and 562 West Forty-ninth street.
The drainage of the houses Nos. 560 and 562 was through a
single pipe laid beneath the cellars and communicating with
another pipe laid beneath the cellar of No. 558, the latter
pipe being the only conduit for all the houses to the sewer
in the street. The defendant Griffith conveyed the house
and lot No. 560 to one Culgin, who conveyed to the plaintiff
in July, 1874. Defendant Griffith, in December, 1874, con-
veyed No. 558 to one Katz; who conveyed to the defendant
Strong, but these conveyances are alleged to have been made
in bad faith, Griffith still remaining in possession or residing
in No. 558. Defendant Griffith or defendant Strong have
attempted to obstruct and cut off the communication of the
drain in the plaintiff's premises with the sewer pipe or drain
of No. 558, which conveyed plaintiff's waste water and soil
to the street sewer. Plaintiff applies for an injunction.

J. F. Daly, *J.*—The premises first conveyed by defendant Griffith were the dominant, and those retained by him (No. 558) the servient, in respect to the easement claimed; and if the servitude was open and apparent at the time of the con-- veyance, the easement passes with the premises and cannot be destroyed by his act or that of his grantee (*Lampman* agt. *Milks*, 21 *N. Y.*, 505). Apparent servitudes are defined to be not only such as are visible or must necessarily be seen, but such as may be seen or known on a careful inspection by a person ordinarily conversant with the subject (*Gale & W. on Easements, p.* 40; *quoted with approval in* 21 *N. Y.*, 516). When defendant became the owner of the three houses and lots, he saw that the drainage of the houses was effected by means of pipes descending through the cellars, and he must have known that these pipes communicated with the sewer through drains. It was for him to ascertain, before conveying any of the premises, whether the drainage of each house was separate, if he desired to sever the premises effect- ually and sell one portion independent of the others. In the case of *Butterworth* agt. *Crawford* (46 *N. Y.*, 349), it was held that the servitude was not apparent, because the drain pipe was laid to conduct sewage from privies in the yard, and the court say.: "There was nothing in the situation or appearance of the premises to indicate that there was any drain, drains not being a necessary accompaniment of privies in the yard, and no evidence being introduced to show that drains from them were usual in the locality in question." It seems to follow from this reasoning that where the appear- ances are such as to indicate beyond doubt that premises are drained by underground sewer pipes, and the owner of two such houses and lots, without making any inquiry as to whether the drainage of the two houses is separate, severs by selling the dominant tenement, and retains and subsequently conveys the servient, he and his grantee hold subject to the easement in the drain, if there be one. Houses such as those mentioned in the complaint, are drained by sewer pipes laid

Hamel agt. Griffith.

under ground, to which the gutter and other waste pipes descend beneath the surface of the cellar or the yard. It is not too much to hold owners and purchasers to the obligation to inquire, or the responsibility of knowing, where these pipes descend to and by what channel the waste water reaches the sewer. It is not a matter of course that each house in this city is drained by a separate sewer connection. There is no evidence to show that such is the case, or that the owner or purchaser has the right to presume that such is the case. The injunction asked for must be granted, with ten dollars costs.