Freedman, J.
Under chapter 182 of Laws 1837, the mayor, aldermen and commonalty of the city of New York became vested with all the right and title ■of the people of this State to the lands covered with water along the easterly shore of the North or Hudson river, between Hammond street and One-hundred-and thirty-fifth street, and extending from the westerly side of the lands under water, previously granted to the city of New York by the act of February 25, 1826, to the westerly line of Thirteenth avenue.
This includes the premises owned or claimed by all the parties to this action.
By the same chapter, the Thirteenth avenue, as laid out on a certain map, was made the permanent exterior street or avenue in said city along the easterly shore of the North or Hudson river, between Hammond street and One-hundred-and-thirty-fifth street, and the several streets south of and including One-hundred-and-thirty-fifth street were ordered to be continued and extended westerly along the then existing lines thereof, from their then existing westerly terminations, on a certain map or plan, to the said Thirteenth avenue. The Eleventh avenue was ordered to be continued and extended from its southerly termination at Thirty-third to Nineteenth street; and the Twelfth avenue was ordered to be continued and extended northerly, along its line from Thirty-sixth street to One-hundred-and-thirty-fifth street.
On July 1, 1850, the city conveyed to Caleb F. *492 Lindsley, by two conveyances, certain water lots or vacant grounds under water, described as being bounded on the north by the center line of Forty-third street; on the south by the center line of Forty-second street; on the east by the line of high-water mark on the eastern shore of the North river, which line was an irregular one ; and on the west ,by the westerly exterior line of Thirteenth avenue, which line was described as “being the permanent exterior line of the said city in said river.”
These deeds grant the property described in fee. The following exception, however, was made in each of said grants, viz.:
“Saving and reserving from out of the hereby granted premises so much thereof as, per said map annexed, forms part or portions of Twelth and Thirteenth avenues and” Forty-third street in the one, and Forty-second street in the other, ‘‘for the uses and purposes of public streets, avenues and highways, as hereinafter mentioned.”
In these deeds the grantee covenants for himself, his heirs and assigns, when required so to do by the city, “at his own proper costs and charges, to build, erect, make and finish, or cause to be built, erected, made and finished according to any resolution or ordinance of the said parties of the first part, or their successors, already passed or adopted, or that may hereafter be passed or adopted, good and sufficient bulkheads, wharves, streets or avenues, which shall form so much and such parts of Forty-third street, Forty-second street, Twelfth and Thirteenth avenues, as fall within the premises described in the deeds mentioned and reserved, as hereinbefore mentioned from out thereof, and will fill in the same with good and sufficient earth, and regulate and pave the same, and lay the sidewalks thereof.” The grantee also covenants for ever thereafter to keep the streets designated “in *493 good order and repair,” and to “obey, fulfill and observe such, ordinances, resolutions, orders and directions, as the city may from time to time enact, or pass, or make relative thereto.” And also covenants that the said streets and avenues “shall forever thereafter continue to be and remain public streets or avenues and highways for the free and common use and passage of the inhabitants of said city and all others passing and repassing by, through and along the same, in like manner as the other public streets, avenues, bulkheads, and wharves of the said city now are or lawfully ought-to be.”
In these deeds the city covenants that Lindsley, upon observing his covenants in the deeds, shall be entitled to wharfage accruing “from that part of the said exterior line of the city lying on the westerly side of the hereby granted premises fronting on the Hudson river .... forever excepting therefrom such wharf-age, cranage, advantages and emoluments to grow or accrue from the westerly end, of the bulkhead in front of the entire width of the southerly half of Forty-third street, .... “And of the bulkhead in front of one-half of the pier of Forty-second street,” both of which were reserved in thé city, with full power to collect and receive the wharfage for their own proper use and benefit forever.
Each of said deeds further provides as follows:
“And it is hereby further agreed, by and between the parties to these presents, and the true intent and meaning hereof is, that this present grant, and every word or thing in the same contained, shall not be construed or taken to be a covenant or covenants of warranty or of seizin of the said parties of the first part, or their successors, or to operate further than to pass the estate, right, title or interest they may have or may lawfully claim in the premises hereby conveyed, by virtue of their several charters and the various acts óf *494 the legislature of the people of the state of Nevr York.”
These deeds were recorded on the 4th and 14th days of August, 1850, respectively.
By a further deed, dated November 11,1852, tho city conveyed to Lindsley the pier now owned and occupied by the plaintiffs. The description reads :
“All the estate, right, title and interest of the said parties of the first part of, in, and to all that certain pier in the city of New York, situate at the foot of Forty-third street, North river, bounded, described and containing as follows: Beginning at the point formed by the intersection of the northerly side of Forty-third street with the easterly line or side of the Twelfth avenue; running thence southerly, along the easterly side, of the Twelfth avenue, to the northerly side of said pier; thence westerly, 211 feet 3 inches ; thence southerly, 40 feet 5 inches ; thence easterly, 212-feet 2 inches to the easterly side of the Twelfth avenue and thence southerly, to a point where the southerly side of Forty-third street intersects with the said Twelfth avenue.
This description by metes and bounds does not include the full width of the street. Nor does the description include the full extent of the street. The-pier was not then as wide as Forty-third street. Nor did it have the full extent of Forty-third street. The street was then nominally laid out to the west side of Thirteenth avenue. The deed then continues: “Together with the extent of the present width of the street, with the right of wharfage thereon, together with all and singular the tenements, hereditaments, and appurtenances belonging,-or in any wise appertaining, and also all the estate, right, title, interest, property, claim and demand whatsoever, as well in law as in equity, of, in or to the above described premises,, and every part and parcel thereof, subject to the right *495 of the parties of the first part, to order said pier extended into the river at the expense of the party of the second part, whenever and in whatever way they may see fit, reserving to the party of the first part, the right to extend said pier at the expense of the corporation of the city of New York, or to grant the right to do so-to other parties, if the said party of the second part fail or neglect to extend said pier when ordered. so to do, in which case the right to wharfage, &c., at the-portion of the pier extended, shall belong to the parties at whose expense the extension shall be made.”
The deed further provides, as the preceding two-deeds had provided, that the true intent and meaning-thereof was to pass only the estate, right, title and interest in the land described, which the city had by virtue of its several charters and the various acts of the legislature, &c.
The property acquired under these three conveyances was conveyed by Lindsley to La Farge.
Both parties to this action, plaintiff and defendants,, hold under mesne conveyances from La Farge’s devisees.
By deed dated March 28, 1860 and recorded May 26, 1860, in Liber 811 of Conv., p. 447, La Farge’s devisees conveyed the pier property to Scholey, Schindler- & Conklin. The latter, by deed dated July 25, 1865, and recorded January 17, 1870, in Liber 1129 of Conv.,. p. 270, conveyed the same property to the New York Ice Co., and the said company, by deed dated March 7, 1867, and recorded January 17, 1870, in Liber 1129 of' Conv., p. 266, conveyed to the plaintiff in this action.
About September 25,1873, the plaintiff was ordered, by the Board of Commissioners of Bocks to extend said pier into the waters of the Hudson River for a-distance of about 300 feet, and about November 21, 1873, the plaintiff was further ordered by said board to. widen said pier to a width of 60 feet for its entire *496 length, as the same then was and as it had been ordered to be extended.
The plaintiff in this connection shows that thereupon the said pier was extended and widened as directed, and that the plaintiff has ever since remained in the full and free use and occupation of said pier so extended and widened as aforesaid.
The defendants, on the other hand, show the following additional facts, viz.:
The order for the extension of this pier was made only after and upon the filing in the office of the Dock Commissioners of an agreement in writing by the plaintiff to pay to the city rent for all land under water covered by the said extensions in length and width of the pier. And upon the express condition that whenever any portion of said land under water belonging to the city and covered by the said extensions of the pier should be required by the city for permanent improvement of the water front, no claims whatever should be made by the plaintiff, or its successors, for damages, or otherwise, for any structures or improvements that may be made upon the land owned by the city.
And upon the further express condition that nothing, contained in the permission or order of the Dock Department for the extension of the pier, “shall be considered or construed as a waiver of the title of the city in and to the land lying outside of the dimensions of the present pier owned by the Knickerbocker Ice Company as laid down in the deed from the mayor, aldermen and commonalty of the City of New York to Caleb F. Lindsley, dated November 11, 1852.”
By another deed, dated February, 1863, and recorded in Liber 867 of Conv., p. 591, La Farge’s devisees conveyed all the property described in the three deeds to Lindsley, except the pier property which they had conveyed to Scholey, Schindler & Conklin, to Charles *497 E. Appleby, who in the next month, March, 1863, conveyed the samé to the defendant, the Forty-second street and Grand street Ferry R. R. Co.
The complaint then charges that the defendant, The ¡New York, Ontario & Western Railway Co., has contracted with the Forty-second street and Grand street Ferry R. R. Co. for a lease of the land under water adjoining the said pier upon the south side thereof and to the west of the easterly line of the Twelfth avenue, or has taken or agreed to take an assignment or transfer of some interest in said premises, and that, claiming to act under authority from, the Commissioners of the Dock Department, The ¡New York Ontario & Western R. R. Co., threatens and intends to take possession of the land under water adjoining the pier of the plaintiff on the .south side thereof, and extending from Forty-third street to Forty-second street, and to drive piles thereon and to fill in the same with solid filling and build thereon ; that by the driving of piles or building crib work and filling in as contemplated by the defendants, the plaintiff will be cut off from its said pier and will be unable to approach the same for a large portion of the south side thereof, or to unload its boats or barges, and will be wholly unable to carry on its business at said pier, and that the injury that will be caused to plaintiff by the threatened acts, if executed, will be irremediable, wherefore the plaintiff prays that the defendants be enjoined.
It therefore becomes important and necessary to ascertain accurately the rights of the respective parties to this action under the conveyances mentioned.
The clause in each of the three deeds by the city to Lindsley, that the true intent and meaning of each conveyance is to pass only the estate, right, title or interest of the city by virtue of its several charters and the various acts of the Legislature, amounts to no qualification or restriction of the grant, because the *498 city possessed and lawfully possessed all the proprietary interests and privileges covered by the grant, and because the grant, as made, did not have the effect of restricting or embarrassing the legislative powers and duties of the city as a municipal corporation. In view of the exceptions made, and even by reason of the insertion of the said clause itself, there is nothing in the decisions of the Presbyterian Church v. The City of New York, 5 Cow. 540 ; Brooklyn Park Commissioners v. Armstrong, 45 N. Y. 234; Whitney v. Mayor, &c., of New York, 6 Abb. N. C. 329, and other cases falling within the same class, which militates against the grant.
The question then is, What was, as matter of fact, granted ? Upon this point, the intention of the parties, as appearing from the language used in the deeds, is to govern, but the surrounding circumstances, and the relations between the parties may be considered for the purpose of ascertaining what they meant when they spoke. And this rule applies with equal force in the construction of every subsequent deed.
By the two deeds first mentioned, the city conveyed the land stretching from the center line of Forty-third street on the north, to the center line of Forty-second street on the south, and from the line of high-water mark on the east, which was an irregular line between Eleventh and Twelfth avenues, to the westerly or exteri- or line of Thirteenth avenue, saving and reserving therefrom so much thereof as forms part or portions of the Twelfth and Thirteenth avenues, and of Forty-second and Forty-third streets. The parts or portions thus saved and reserved, constituted, as held by the general term of the supreme court, in Langdon v. The Mayor, &c.,' exceptions and not mere reservations, which left the fee to them in the city, for the uses and purposes of public streets, avenues ^and highways. Aside from these exceptions, the land conveyed was *499 conveyed in fee. Certain covenants were entered into by the grantee, which will be hereinafter considered, but the grant was not diminished thereby. At this time the exterior line of the city on the North river, in that vicinity, had been fixed as coincident with the westerly line of the Thirteenth avenue, which last mentioned line was 646 feet and 2 inches west from the easterly line of the Twelfth avenue, and about 430 feet west of the westerly end of the pier thereafter conveyed.
At the time of the execution by the city of the third deed to Lindsley, by which the so-called pier property was conveyed, the pier then in existence was 40 feet and 5 inches wide, and extended about 211 feet from the east side of the Twelfth avenue. It was situated within the boundaries of Forty-third street in such a way, that, between the southerly side of the pier and the southerly line of the street, there remained a strip of about 4 feet in width. This strip, as well as so much of the' whole pier as was south of the center line of Forty-third street, had been expressly excepted from the two conveyances first mentioned. In conveying the pier property by the description contained in the third deed, the city conveyed not only the pier itself, but also the land covered by the dimensions of the pier in fee, and the words “ together with the extent of the present width of the street,” carried the fee for the length of the pier to the southerly side of Forty-third street, as then laid out on a certain map; for the words used clearly iáeant the width of the street as thus laid out. To the south of this southerly line of Forty-third street, the city could grant no right of way or easement, for the reason that the fee of the land south of that line had already been conveyed without the reservation of a right of way or easement over the water (Outerbridge v. Phelps, 45 N. Y. Super. Ct. 555).
But the position of affairs changed when a union of *500 all the lands and interests and the appurtenances was effected in Lindsley, who was also the owner of the uplands, to the east .of the high-water mark. It then became competent for him to convey the pier property with appurtenances that did not previously belong to it, but were necessary to the use of the pier as a pier, in case of its severance from its other property. He, it is true, did not do so. He conveyed the whole to La Farge. But this placed La Farge in the same position. When, therefore, the devisees of La Farge made severance and conveyed the pier property, while they retained the remainder, and in doing so conveyed the pier by the description contained in the deed from the city to Lindsley, together with the extent of the width of the street, and also together with all and singular the appurtenances, &e., &c., and all the estate, right, title, interest, property, claim and demand which was in La Farge, at the time of his decease, of, in and to the same, and every part ,and parcel thereof, and added covenants in the ordinary form for the quiet enjoyment and warranty, not only of the pier property specifically described, but also of the appurtenances-, the grant carried with it all that La Farge had owned which was necessary to the use of the pier as a pier (Lapman v. Milks, 21 N. Y. 505 ; Doyle v. Lord, 64 Id. 432 ; Simmons v. Cloonan, 81 Id. 557.)
The rule of construction applicable to the deed by the devisees of La Farge to Scholey, Schindler & Conklin, under which the plaintiff claims being as stated, and there being a strip of only four feet of water between the southerly side of the pier and,the southerly line of the street, it was almost absolutely necessary to the enjoyment of the pier, as such, by the grantees, that the land under water remaining in the grantors and adjacent to the southerly line of Forty-third street should remain free and unobstructed, as in times past, for a distance which with the strip of four *501 feet in width would constitute a reasonable distance from the southerly side of the pier, and especially was it necessary, because the right to wharfage on the westerly end of Forty-third street, where said street adjoins the exterior line of the city, had been expressly reserved to the city by the deeds of 1850. This being so, the right to use the water for such a reasonable distance constituted an easement in favor of the pier property conveyed which passed with the land, and a servitude upon the property retained.
From these matters and the fact that the deed to Scholey, Schindler & Conklin was duly recorded, it follows that when, by subsequent conveyances the Forty-second street and Grand Street Ferry Eailroad Co. acquired the title to all the remaining property, such property was and continued subject to the servitude named.
The next question then is as to how long this servitude is to continue. Upon this point the covenants of Lindsley in the deeds accepted from the city become important, because they did and do run with the land. In the two deeds first accepted, he covenanted for himself, his heirs and assigns, that, whenever he should be required by the city so to do, he would build sufficient bulkheads and wharves, and fill in so much and such parts of Forty-second and Forty-third streets,' and Twelfth and Thirteenth avenues, as fell within the premises described and excepted, and to regulate and pave the same, and lay the sidewalks thereof, and that the said streets and avenues should forever thereafter continue to be and remain public streets or avenues and highways for the free and common use and passage of the inhabitants of said city and all others, &c., &c.
The conveyance of the pier property by the" third deed accepted by him was made in express terms, subject to the right of the city to order the said pier to be extended, and although, as already stated, it conveyed *502 with the pier the land covered by the pier in fee, it conveyed, especially as the interest of the city only was conveyed, only such a fee as the city possessed, namely, a fee subject to whatever easements existed in favor of the public. What these easements were, or whether in fact there were any, it is not necessary to determine here. These questions, may hereafter become of importance as between the plaintiff and the city.
It sufficiently appears, however, that both the plaintiff and all its grantors took the pier in question with notice that Forty-third street was to be extended to the exterior line of the city, namely, the westerly side of Thirteenth avenue ; that Twelfth and Thirteenth avenues were to be built between Forty-second and Forty-third streets ; that all the then existing water between Forty-second and Forty-third streets and west of the easterly line of Twelfth avenue was to be filled in, and all access to the southerly and westerly sides of said pier cut off, whenever the city saw fit so to direct; and that in consequence thereof the character of the pier.as a pier would be completely destroyed. As matter of legal effect the title to the streets and avenues thus to be made, was to remain in the city for the uses and purposes stated. In the meantime the plaintiff and all its grantors, took the pier subject to the right of the city to order the same to be extended, &c., so far the city saw fit to require only the extension of the plaintiff’s pier for a length of about 300 feet, and its widening to a width of 60 feet. This was done, and it was done in such a way, that under the deeds of 1850 and the agreement filed by the plaintiff with the Department of Docks concerning the said extension and widening, the title to the land covered by the extension or the new pier, as it may be called, remained in the city. And the plaintiff further agreed that whenever any portion of the land under water, belonging to the city and covered *503 by the said extension, should be required by the city for the permanent improvement of the water front, no claim whatever should be made by the plaintiffs, or its successors, for damages, or otherwise, for any structures or improvements that might be made upon the land owned by the city.
The rights of the plaintiff, so far as they appear material to this motion, may therefore be summed up as follows, viz.:
The plaintiff owns the old pier, and whatever fee the city had to the land upon which it stands and to the strip of four feet between the southerly side of said pier and the southerly line of Forty-third street, as laid out on the map, with a right of way over the water to the south of the last mentioned line for a reasonable distance, and it also has a lease of the land under water on which the new pier stands.
These rights are subject, however, 1. To Lindsley’s covenants in the deeds of 1850 to build, uphold and keep in good repair the south half of Forty-third street and the whole of Twelfth and Thirteenth avenues (so far as described in the deed) as public streets or avenues and highways forever hereafter; 2. To the city’s right to convert the new pier into a public street; 3. To the city’s right of wharfage accruing from the westerly end of the southerly half of Forty-third street; and, 4. To 'the right of the defendant, The Forty-second street and Grand street Ferry It. ft. Co., as grantees of Lindsley, to all wharfage accruing from the bulkhead extending, when constructed pursuant to requirement by the city, along the exterior line of the block from the southerly line of Forty-third street to the northerly line of Forty-second street, and necessarily cutting off all access by water to the southerly side of plaintiff’s pier. Of course, the filling in of Twelfth and Thirteenth avenues under the *504 direction of the city, implies the right to fill in the intermediate space.
But until the city gives such a direction or makes such a requirement, the plaintiff has the right to the continued use of the old and the new pier, and the land of the Forty-second street and Grand Street Ferry R. R. Co., remains subject to the servitude above mentioned. To be effective, such direction or requirement, when given or made, must be given or made in conformity with the terms of the deeds of 1850 (Mayor, &c. v. Smith, Daily Register of November 18, 1882, Opinion by Van Vorst, J.).
The next inquiry, therefore, must be, whether the improvements proposed to be made by the N. Y., Ontario and Western Railway Co. as the lessee of the Forty-second Street and Grand Street Ferry R. R. Co., are of a character contemplated by the covenants, and whether they are about to be made in pursuance of a requirement by the city.
The motion papers present some conflict as to the extent of the intended improvements, but the defendants assert positively that the westerly line of said improvements will not extend beyond the westerly line of the old pier as it existed prior to its extension, and I shall assume the truth of the assertion. Concerning the character of the improvements, the filling in which they involve along the southerly side of Forty-third street, would be clearly within the power of the defendants, in case the Thirteenth avenue were in process of construction or had been required to be built, because in such a case it must have been contemplated by the covenantor. If, therefore, the N. Y., Ontario and Western Bail way Co. can rightfully proceed with the filling in, it clearly may make the other improvements contemplated by it.
But I cannot find that the proposed filling in is to be done pursuant to any requirement from the city. *505 Nor is it to be done as part of the general plan adopted by the Department of Docks and the Commissioners of the Sinking Fund for the improvement of the water front. The N. Y., Ontario and Western Railway Co., as a private party, and for its own purposes, desires to build a ferry landing, and to do so, it is found that the land under water, almost immediately adjoining plaintiff’s old pier, should be filled in. Application is made to the department of docks for permission to do so in advance of the carrying out of the general plan for the improvement of the water front, and the permission is given. This clearly shows that, even if it be assumed, that the Department of Docks is capable of fully representing, and does fully represent, the city for the purposes under consideration, the proposed filling in was neither required by the city to be done pursuant to the covenants of 1850, nor does it constitute part of the authorized plan for the improvement of the waterfront. The permission given can not therefore have the effect of authorizing the defendants to deprive the plaintiff of any right which it possesses in the premises until the city sees fit to act. True, as between the city and the defendants the permission may partake of the nature of a requirement, for the defendants may, so far as they themselves are concerned, waive their rights. But as against the plaintiff, the action of the city must rest in the discharge of a public duty, and must be in conformity with the covenants of 1850 or the requirements of the authorized improvement of the water front.
It has been insisted, however, that even if the plaintiff ever could claim the easement contended for, the same was abandoned, because neither the southerly side of the old pier, nor the water on the south side of that pier, has been used for the purposes claimed by the plaintiff since the extension of the pier. Upon this point there is a conflict of evidence. The preponder *506 anee, in my judgmént, shows a continued limited use owing to insufficient depth of water at certain times, but not an abandonment. Upon the whole, the plaintiff has shown enough to call for the continuance of the injunction, if otherwise entitled thereto, to protect whatever use can be made of the pier as such.
Another point strongly urged in opposition to the motion, is, that the plaintiff is now a trespasser upon the land of the defendants along the entire southerly line of the new pier by reason of the construction upon piles driven for that purpose, and the maintainance and use of a so-called ice platform along said southerly line, and that by reason thereof the plaintiff does not some into a court of equity with clean hands. The trespass seems to have been clearly established. But under the decision of the court of appeals in Comstock v. Johnson, 46 N. Y. 615, this only constitutes matter to be considered in the framing of the relief to be granted.
Other matters have been alluded to, but they do not, after what has already been said, call for special notice. The object of the action being to secure a determination of the rights of the parties to it as between themselves, neither the city nor the Department of Docks is a necessary party to this action, nor is it necessary to determine what action the Department of Docks may take in the exercise of the statutory powers conferred upon it.
My conclusion is that the injunction heretofore granted should be continued against the defendants during the pendency of the action, but in a modified form. In the first place, it should be made conditioned upon the removal within a reasonable time by the plaintiff of all encroachments upon the land of the defendants along the southerly line of the new pier, and in the second place, it should in terms provide for its expiration before the termination of the action in case *507 the defendants should be required by the city under the covenants of 1850 to do any work, the doing of which would necessarily interfere with or destroy the easement of the plaintiff.
Order to be settled on motion.