CLARENCE SCRYMSER, APPELLANT, *v.* ROYAL PHELPS, RESPONDENT.

*Easement — separate conveyances of two buildings having a common passage-way — when the easement of passage will be extinguished if not expressly reserved — when the mortgagee loses his right to such an easement by releasing the servient tenement from the lien of the mortgage.*

In 1864 one Spofford owned a building on the north-west corner of Broadway and Morris street, fronting on Broadway, and also a building situated upon the adjoining lot on Morris street, in New York city. A passage, about seven and a-half feet wide, led from Broadway through the corner building, to and through the west wall thereof and to the Morris street building, and to a third building erected on land belonging to Spofford, being an extension from the rear of the corner building. In the Morris street building, immediately in the rear of the corner building, a stairs was maintained giving access to the upper portion of both buildings. The passage from Broadway was used for the common convenience of the three buildings. In 1864 two mortgages had been given upon the property, which were subsequently assigned to the Mutual Life Insurance Company at the instance of Spofford, who owned all the property, subject to them.

Thereafter, in 1873, the company, in consideration of $25,000, released by a quit-claim deed the premises on the corner from the lien of the mortgages, describing them as running along the northerly line of Morris street, about fifty-eight feet, to an angle in the wall formed by the division wall between the corner building and the one adjoining on Morris street, and thence along said division wall thirty feet, more or less, to the northerly side of the mortgaged premises. No reference was made in this instrument to the passage, nor was any right to use the same reserved. Subsequently the title to this corner lot became vested in the defendant; no reference to the passage being contained in any of the conveyances thereof.

The mortgages on the remainder of the property were foreclosed and the property was sold to the insurance company, and by it .was conveyed to the plaintiff. No reference to the passage was made in these conveyances.

In an action by the plaintiff to restrain the defendant from obstructing the passage and preventing persons from passing through it to the plaintiff's building:

*Held*, that the property released by the insurance company to Spofford extended to 'the westerly line, or at all events to the center of the division wall.

That no right to use the passage remained in the company by virtue of its mortgages after it had executed the absolute release to Spofford; that no such right was or could be conveyed by it to the plaintiff, and that this action could not be maintained.

APPEAL from a judgment, recovered on trial at Special Term, and also from an order denying a motion for a new trial upon a case. and exceptions.

*John A. Bryan* and *Francis M. Scott*, for the appellant.

*George De Forest Lord*, for the respondent.

DANIELS, J.:

The action was brought to compel the defendant to remove an obstruction which he had erected in the division wall between a building owned and occupied by him fronting on the north-west corner of Broadway and Morris street in the city of New York, and plaintiff's adjoining buildings in the rear on Morris street, and to restore the hallway through the front building, so that it might be used by the plaintiff and his tenants occupying the rear buildings for egress and ingress to and from Broadway. The hallway was constructed from the Broadway front of the defendant's building through the rear buildings occupied chiefly by the plaintiff's tenants. This hallway constituted an avenue from the Broadway front to the ground floor apartments of the rear rooms in the plaintiff's buildings. It was constructed in this manner by Paul N. Spofford in the years 1864 and 1865, and a stairs was maintained in the plaintiff's buildings immediately in the rear of defendant's building, through which access was secured to the upper portions of both buildings. Spofford at the time when these changes or improvements were made in the buildings, was the owner of the premises both in 'the front and in the rear, and both parties to the action acquired the title which he had to the property. Before he obtained title to it himself, two mortgages had been given upon it, one to secure the

payment of $40,000, and the other to secure the payment of $10,000. These mortgages were both given in March, 1864. Before the execution of these mortgages a building was erected upon the Broadway front of the property through which the plaintiff claims the right to maintain and use the hallway. This building was bounded on the south by Morris street about fifty-eight feet and eight inches, and on the east by Broadway twenty-nine feet and nine inches. At the west it terminated in a brick wall through which the hallway extended into the premises upon the rear. Upon the rear part of the premises in question another building was erected, known as 2 and 4 Morris street, fronting upon Morris street. After that an extension was built from the rear of the building on the corner of Broadway and Morris street, and this hallway was used for the common convenience of the occupants of the three buildings, and they were alike subject to the two mortgages upon the property which have already been mentioned.

These two mortgages were assigned to the Mutual Life Insurance Company of New York in November and December, 1868. The assignments were taken at the instance of Spofford, who owned all the property subject to the mortgages, and he guaranteed the payment of the mortgage debts by his own bond in the penalty of $100,000. After these assignments were taken by the insurance company, and the changes had been made in the buildings, and while the insurance company was the owner of the mortgages, and on or about the 6th of January, 1873, the insurance company executed and delivered to Spofford a release of the premises on the corner of Broadway and Morris street from the lien of these mortgages. This release contained the following recital and discharge: " And, whereas, the said party of the first part, at the request of the said party of the second part, has agreed to give up and surrender the lands hereinafter described, unto the said party of the second part, and to hold and retain the residue of the mortgaged lands as security for the moneys remaining due on the said mortgages. Now, this indenture witnesseth, that the said party of the first part, in pursuance of the said agreement, and in consideration of the sum of $25,000 to it duly paid, at the time of the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, released, quit-claimed and set over, and by these presents

does grant, release, quit-claim and set over, unto the said party of the second part, 'All that part of the said mortgaged lands which is described as follows: Beginning at the corner formed by the intersection of the westerly line of Broadway with the northerly line of Morris street; running thence, westwardly, along the northerly line of Morris street, about fifty-eight feet, to an angle in the wall formed by the division wall between the premises now being described and a building in the rear, forming an extension thereof; thence running northwardly along said division wall, thirty feet more or less, to the northerly line of said mortgaged premises and land formerly of Garret Van Horne; thence running eastwardly along said last mentioned land, to the westerly line of Broadway; and thence southwardly along the same, twenty-nine feet and nine inches, to the point or place of beginning. The premises hereby intended to be conveyed being shown on the accompanying diagram by the color yellow, and being that portion of the said mortgaged premises properly known as number 29 Broadway; not, however, including the rear or extension thereof."

" Together with the hereditaments and appurtenances thereunto belonging, and all the right, title and interest of the said party of the first part, of, in and to the same, to the intent that the lands hereby conveyed may be discharged from the said mortgages, and that the rest of the lands in the said mortgages specified may remain to the said party of the first part as heretofore. To have and to hold the lands and premises hereby released and conveyed to the said party of the second part, his heirs and assigns, to his and their own proper use, benefit and behoof forever, free, clear and discharged of, and from all lien and claim under and by virtue of the indentures of mortgages aforesaid, or of either of them."

After it was executed and delivered Spofford mortgaged the property described in it to William, Albert and Charles Hickman, as executors, to secure the payment of the sum of $50,000. This mortgage contained the same description as was contained in the release, except that it omitted the words " not, however, including the rear building or extension thereon." It was afterwards foreclosed, and on the sale under the judgment the property was bid in by the defendant in this action and a deed was executed and delivered to him of the premises containing the following description:

"All that certain lot, piece or parcel of land, situate, lying and being in the First ward of the city of New York, with the buildings thereon erected, bounded and described as follows: Beginning at the corner formed by the intersection of the westerly line of Broadway with the northerly line of Morris street; running thence westwardly along the northerly line of Morris street, about fifty-eight (58) feet, to an angle in the wall formed by the division wall between the premises now being described and a building in the rear forming an extension thereof; thence running northwardly along said division wall thirty (30) feet, more or less, to the northerly line of said premises and land formerly of Garrett Van Horne; thence running eastwardly along said last mentioned land to the westerly line of Broadway, and thence southwardly along the same, twenty-nine (29) feet and nine (9) inches, to the point or place of beginning, and known as number twenty-nine (29) Broadway."

And it is under this title that the defendant claimed and exercised the right of closing the passage-way between his building and those situated in the rear, by building in the space previously occupied by the passage-way through the division wall.

The Mutual Life Insurance Company foreclosed the two mortgages held by it upon the premises in the rear of those released to obtain payment of the remaining half of the mortgage moneys not paid by Spofford as the consideration for the release. The premises remaining subject to the mortgages were purchased by the insurance company, and a deed conveying the title to them to the company was made on or about the 25th of February, 1880, and in March, 1880, the company by two deeds conveyed the same premises to the plaintiff in this action. By one of the deeds it conveyed the lot and building immediately in the rear of the premises released, and by the other the premises still further west. By virtue of these deeds the plaintiff claimed that he had become entitled to the use and enjoyment of the premises purchased by him for himself and his tenants in the same condition in which they were at the time of the execution and delivery of the release by the company to Spofford. Prior to that time they were owned by him, and had by his voluntary acts been placed in that condition, and the buildings erected upon the lands were all occupied and enjoyed as one common property.

In the course of the argument it was insisted that the release did not include in its description the rear wall of the building standing upon the corner of Broadway and Morris street. This position was taken upon the language in the release designating the southerly and westerly lines. The southerly line was extended about fifty-eight feet to an angle in the wall formed by the division wall between the premises being described, and a building in the rear forming an extension thereof, thence running northwardly along said division wall thirty feet, more or less, to the northerly line of said mortgaged premises. But this position is not deemed to be well founded. For the intention seems to have been to release to Spofford all that part of the mortgaged property known as No. 29 Broadway, and the only exception made from it was by the declaration that the release should not, however, include the rear building or extension thereof. The same conclusion is also supported by the fact that the westerly line of the premises described in the release was declared to run "along said division wall," which phraseology would ordinarily be understood as locating the line designated in the center of the wall. This has been the construction which has been given to similar terms made use of in deeds bounding lands on a highway, or a stream of water, for the language where no different intention is disclosed has been deemed to be sufficient to carry the boundary line to the center of the highway or street, as the case might be. (*Mott* v. *Mott*, 68 N. Y., 246.) Both from these terms, and those declaratory of the exception, it is plainly to be inferred that at least half, if not all, the division wall of the premises known as No. 29 Broadway was intended to be included within the bounds mentioned in the release. And the diagram attached to the release was plainly intended to convey the same impression. It will therefore be assumed that by the execution and delivery of the release, Spoffard secured the discharge of the premises from the mortgages either to the center or westerly bounds of the wall on the rear of the building standing on the corner of Broadway and Morris street.

In this release no reservation was made to the insurance company of any right or privilege for itself or any of the occupants of the property, still left subject to the mortgages, to use, occupy or enjoy any part of the premises released for any purpose whatsoever, but

the instrument contained an absolute and unqualified release of the property described in it from the mortgages. The consideration which the company received for that object was the sum of $25,000, and it as completely severed and discharged the premises described in the release from the mortgages, as though they never had been included in them. In addition to this circumstance, the release contained no language from which an intention on the part of the insurance company could be inferred of reserving or securing to itself, or any persons afterwards acquiring title under it, of any right to this hall or passage-way; but it was framed in such a manner as to contain as unqualified and unrestricted a release of the defendant's premises from the mortgages as could well have been made. The diagram added to the description, and made a part of it, is consistent only with the same intention, and that was to release the premises to Spofford free from all claim to or in them on behalf of the insurance company. This diagram contains no indication whatever of the existence of the passage-way and no reference was made to it, either directly or indirectly, by anything contained in the release, but it was the property as it is described, and also made to appear by the diagram, that was unqualifiedly and unrestrictedly released by the company to Spofford, and from an instrument executed and delivered in that form no intention can be inferred or presumed that it was designed to be qualified by the continuance of the right, or privilege, to use the passage-way for the accommodation or convenience of the buildings standing on the rear of the property, and in fact fronting upon Morris street. In _Huttemeier_ v. _Albro_ (18 N. Y., 48) it was held by the court that "whether a right of way or other easement is embraced in a deed is always a question of construction of the deed having reference to its terms, and the practical incidents belonging to the grantor of the land at the time of the conveyance. The intention of the parties is to be learned from those facts. (Id., 52.) Applying this rule to this case it would seem to require the exclusion of the right, or privilege, now claimed and relied upon in behalf of the plaintiff, to maintain and support this action. The property intended to be released was described in the release by metes and bounds, and when that is the form given to the conveyance it is to be inferred from it, where no further intention is expressed or indicated, that all which is designed to be

conveyed is the property so described, and that a way over other property of the grantor for the benefit of the premises cannot be claimed or sustained as an appurtenant to the premises so described. This point, as well as the effect of such an instrument, was considered in *Parsons* v. *Johnson* (68 N. Y., 62), where it was held that where there has been an easement with a dominant and servient tenement, and the ownership of the tenements has been unified or vested in the same person, as they were in this instance, "when the ownership is again severed by a conveyance of the dominant tenement, the way will not pass by the general word 'appurtenances' merely, but there must be particular or general words indicating an intention to grant the way." (Id., 65, 66.) The principle would also seem to as appropriately include a conveyance of the servient tenement itself, where no reference whatever is made to the alleged servitude; but the property is conveyed in the same manner and by the same terms as though the servitude had no existence whatsoever. The way or passage, of the description of that claimed in this case, is what has been called a non-continuous easement, and it was said in the case just referred to that such an easement " will pass only by words sufficient to create a new easement and annex it to the newly made dominant tenement, and the word 'appurtenances' is not sufficient." (Id., 66.) "It is equally clear that it did not pass as an incident of the premises granted and as parcel thereof within the class of cases " (previously cited in the same opinion.) " These lands were conveyed by precise bounds, and hence what is not included is supposed to be excluded." (Id., 70.) *Grant* v. *Chase* (17 Mass., 443) is peculiarly pertinent in support of this proposition in its application to this case. Neither the cases of *Lampman* v. *Milks* (21 N. Y., 505), *Simmons* v. *Cloonan* (81 id., 557), nor *Pyer* v. *Carter* (40 Eng. Law and Eq., 410), contain anything in conflict with these views, or which can be relied upon in support of the proposition advanced in behalf of the plaintiff. While those of *Shipman* v. *Beers* (2 Abb. N. C., 435), and *Shoemaker* v. *Shoemaker* (11 id., 80) are directly in conflict with it. Numerous other authorities have been referred to in the points and arguments presented in support of the appeal, but without referring specially to them it is sufficient to say that they are not in conflict with those to which reference has been made, and do not require

any other or different construction than that which has been indicated to be given to this release.

It has been urged that it should be so construed as in effect to create a new mortgage from Spofford to the insurance company upon the remaining premises at the time when the release was made, but such plainly was not the effect of the acts of these parties. What they did, and all that they did, was to release the property situated upon Broadway and Morris street from the mortgages, and that left the mortgages an incumbrance upon the remaining property described in them, as and from the time when the mortgages themselves were given. This was the actual transaction of the parties and the court is not at liberty to change it by placing any other or different construction upon it or attributing any other effect to it. What was done was to release the premises absolutely to the releasee, subjecting them after that to his unlimited and unqualified control so far as anything contained in the mortgages should from that time be considered.

The passage-way constructed and maintained by Spofford through the building was about seven and a-half feet in width, including about one-fourth of the Broadway front of the building, and it would do violence to the acts of the parties to so construe the release as to infer an intent that this was to be perpetually maintained for the benefit of the rear portion of the property, when no allusion whatever to such a reservation or exception was inserted in the release. The only consistent construction to be placed upon it is that which has been suggested; that it was intended to release to and vest in the releasee the absolute and unqualified title and control to and over the property mentioned and referred to in the release. And as by the mortgage afterwards given by Spofford upon the same property, this hallway was not preserved, but the premises mortgaged were described as they were in the release, and were purchased by the defendant by the same substantial description, he acquired the same rights as had been created by the release and did not hold the property subordinate to the right or privilege now claimed and insisted upon in favor of the plaintiff.

By the foreclosure and sale upon the mortgages held by the company it acquired title to the premises described in them, and to no more than that, and when the plaintiff received his deed from the

company in like form the rights conveyed to him were subject to the same restrictions.

It has been further claimed that the plaintiff was entitled to damages for the closing of the hallway, by reason of the fact that Spofford executed and delivered another and later mortgage covering the entire property owned by him which had been acquired by the plaintiff, but as this mortgage in no manner attempted to create or preserve the right on which the plaintiff's action is dependent, and merely included the real estate by its apt description by metes and bounds, it is not perceived how such an action may be supported by means of this incumbrance. The plaintiff has no title to the property over which the easement or servitude is claimed by means of this mortgage, neither did it in any form attempt to revive or perpetuate that which might have been claimed if it had not been for the execution and delivery of the release. That instrument accordingly presents the fundamental difficulty in the plaintiff's way, and because of the effect required to be given to it the action which was brought by the plaintiff cannot be sustained.

It is not necessary to consider the appeal from the order denying the motion for a new trial. Such a motion has not been provided where the action has been tried by the court. But if it had been, as the plaintiff is incapable of maintaining the right to use the defendant's property, or any portion of it, in subordination to his own, the action cannot be maintained.

The judgment which was entered in the case is right and it should accordingly be affirmed, together with the usual costs, and the appeal from the order should be dismissed.

DAVIS, P. J., and HAIGHT, J., concurred.

Judgment affirmed, with costs; appeal from order dismissed.