Folger, J.
 

 The respondents as owners or occupants of the premises described in the complaint, claim a right in the lands of the appellant Cloonan, and in the street of the other appellant, to have a pond of water maintained on the lands of the first, and to draw the water away through a flume under the street of the last. They do not claim this by prescription or express grant, but by an implied grant from the express grant of the premises occupied by them, or as incident or appurtenant thereto. To be more particular, it is claimed that all the lands affected were once a single tenement; that the owner thereof, by an artificial arrangement of its properties, created from natural streams and springs a pond upon the portion which is now the land of Cloonan, and built under the portion thereof which afterward became the street of the other appellant a flume; that the waters of the pond were by this flume, drawn for the use of the -mill on the
 
 *9
 
 portion of the tenement which is now the respondent’s
 
 premises;
 
 that this was done by the owner of the whole tenement for the use aud benefit of that mill on those premises; that with matters in this state open and visible, and the use of the water absolutely necessary to the enjoyment of the mill and premises, and actually and continuously used therefor, he conveyed the premises occupied by the respondent to their grantor, and afterward conveyed to Cloonan the land covered by the pond with no reservation of water privileges; that the appellants are making threats and doing acts to put their threats in force, to fill up the pond on Cloonan’s land, and to tear out the flume from under the street to the great injury and damage of the respondents.
 

 If the facts of the case sustain the claim of the respondents, they are entitled to the judgment they have obtained restraining the appellants. For it is held, 1st. That when an owner of a whole tenement has by some artificial arrangement of the material properties of Ms estate, added to the advantages and enhanced the value of one portion of it, he cannot after selling that portion with those advantages openly and visibly attached, voluntarily break up the arrangement and thus destroy or materially diminish the value of the portion sold.
 
 2d.
 
 It is further held, that the moment the severance of the tenement takes place by a sale of a part, the right of the owner to redistribute the properties of the respective portion ceases, and easements and servitudes are created, corresponding to the benefits and burdens mutually existing at the time of the sale. 3d. It is further held, that parties are presumed to contract in reference to the condition of the property at the time of the sale, and that neither has a right by altering arrangements then openly existing, to change materially the relative value of the respective parts.
 
 (Lampman
 
 v. Milks, 21 N. Y., 505.)
 

 We may add to this, for the purposes of this case, that these rules apply to affect and govern all grantees of the original owner, so that they who purchase the portion of the original tenement benefited acquire the benefits, and they
 
 *10
 
 who purchase the portion burdened take it subject to a continuation of the burdens, so far as the benefited portion is concerned.
 

 Do the facts of the case enable the respondents to take advantage of the rules thus laid down, and do they subject the property of the appellant to a disadvantage resulting from them ?
 

 In 1849, while Jansen Hasbrouck and Ludlum owned, as trustees the whole tenement afterwards separated into portions, they did make an artificial arrangement of the material properties of it. By this arrangement they did lay an open and visible burden upon that portion of the tenement now owned by Cloonan, and did give an open and visible benefit to another portion; but it remains to be seen whether that portion was the one which is now owned by the respondents. In making this artificial arrangement, Hasbrouck and Ludlum had in mind to effect two purposes. One was to lay out a street. The other was to make a reservoir for “ the old mill property,” which is not the property owned by the respondents. And both of these purposes were accomplished and adhered to by them. The street was laid out, and is now used by the public. The reservoir was made, and its water was used for the old mill, and was not by them or either of them used for any other mill. Hasbrouck afterwards became the sole owner of the whole tenement, and suffered it to remain thus affected by this artificial work so long as he owned the whole. In March, 1850, he conveyed to Brown “ the old mill property,” and thus he severed the tenement, he retaining with some other the portion upon which the pond had been created and the flume built, and conveying to Brown the old mill property, the portion to which the benefit had been given. Doubtless, had there been nothing but a conveyance of the land, Brown would have become entitled to retain the benefit thus given, and would have had the right to compel a continuance of the burden upon the portion not conveyed by Hasbrouck. • But the parties in the instrument of conveyance stipulated otherwise. In express
 
 *11
 
 terms, the right and privilege to use the water of the reservoir was granted for the purposes of the mill standing on the lands
 
 conveyed;
 
 and in express terms it was made a condition that in case the mill should not be kept in use, all water privileges and right of flowage granted should cease and determine and revert to Hasbrouck. By this express grant and condition in the conveyance, the parties repelled the presumption that they contracted in tacit reference to the condition of the property at the time of the sale, and Hasbrouck was not precluded, certainly so far as Brown was concerned, from altering the arrangements of it then openly existing, whenever the condition in the conveyance should become operative, and the rights of water and flowage should revert. It is in the findings, that afterwards Brown abandoned the old mill. It was not kept in use. The water was no longer used for its purposes. The rights of water and flowage granted reverted to Hasbrouck. So that it cannot be held that the old mill property has acquired and retained the benefit of the reservoir, and that the lands above the dam have been and are charged with a burden for it.
 

 This old mill property is not affected by this action. But it is important to notice the action of Hasbrouck and Brown in regard to it, as that action bears upon the matters involved. And it appears clearly from that action that the enjoyment of this benefit by the old mill was matter of express agreement, that the portion of the whole tenement which was intended to be benefited by this arrangement, and the portion which was actually benefited and which was openly and visibly benefited, was the old mill property and none other. And this derives support from the consideration of another covenant or stipulation in the conveyance, that Brown should at all times while the reservoir dam was kept up, maintain the same in such manner that the property and land, below (of which those of the respondents are a part), should not sustain injury by the neglect so to do. It is plain from this, that the lands of Hasbrouck below the dam not included in the portion conveyed to Brown, were not in their view at
 
 *12
 
 that time benefited by this work, but rather burdened by the leading of the water through them, and the exposure more or less hazardous, to damage from the dam and reservoir against which this covenant was to protect. It is to be observed too, that Hasbrouck and Brown when they came in June 1850 to contract for the purchase and sale of the premises now of the respondents, make no mention in their agreement of rights to water. When we consider the parties to the contract are the parties to the deed of March preceding, in which these rights are expressly and with particularity conveyed, a strong circumstance is presented, repellant of the presumption that they contracted in reference to such a condition of the premises, as presented them to their view as having a benefit from the artificial work erected by Hasbrouck and Ludlum. And it is found also by the referee, that' Hasbrouck never agreed with Brown that the reservoir should be used for any other purpose than that of the old mill, or that the property now owned by the plaintiffs should be substituted for the old mill property in its use of the water privileges.
 

 In June 1850 when Hasbrouck entered into the contract with Brown, to sell and convey the premises now owned by the plaintiffs, those premises as we appreciate the facts found by the referee and shown by the evidence, had obtained no benefit to the extent claimed by the plaintiffs from the dam reservoir and flume; rather as we have shown above, were they burdened with the necessity of giving passage to the water drawn from the reservoir for the use of the old mill below. There is nothing in the contract itself, from which there can be ascertained an affirmative intention of the parties, more than to buy and to sell and convey at a given price, this piece of land in the state in which it then was. Doubtless, under the rules we have drawn from the case cited, they must be presumed to have contracted in reference to the condition of the property at the time. But we think, with reference to that condition, not solely as it would have been presented to a stranger, but as it was known to be by the
 
 *13
 
 parties. Brown knew that the reservoir was built to supply water to the old mill, and that the flume was placed in part upon the premises contracted to be sold, and the water led across them for that purpose, and so is not to be presumed to have contracted with reference to any other condition of the premises than that. But soon after the making of the contract Brown built a mill on the land and drove it by water from the reservoir, taken from the flume, and led by a wooden race-way on the land to the mill. As there was no agreement with Hasbrouek, giving Brown the right to do this, and no finding or proof of a license to do it, it must have been done by no greater authority than a tacit acquiescence on the part of Hasbrouek. But even that is not shown. It was the act of Brown alone, and not the affirmative act of Hasbrouek, or done by his express authority. So that it cannot be said, though Hasbrouek remained the owner of the legal title to the lands, and so of the whole tenement of which they were a portion, that he made the particular artificial arrangement of the wooden race-way, which added to its advantages and enhanced its value. When then, on Smith becoming the assignee of the contract of sale, Hasbrouek conveyed that portion to him, though the condition of it was changed, and to Smith’s observation possessed these advantages, yet as Hasbrouek was bound by his contract to convey, and did no more by conveying than perform that contract, he cannot be held obnoxious to the first principle cited from the case in 21 N. Y.
 
 (supra).
 
 For the artificial arrangement was not his act.
 

 If he is to he controlled at all, it is by the third principle, that parties are presumed to contract in reference to the condition of the property at the time of the sale, and that neither has a right by altering arrangements then openly existing, to change materially the relative value of the material parts. How whether he is to be affected by this principle depends upon whether the time of the sale is to be considered the time when the contract for it is made, or the time when the conveyance in performance of that contract is delivered. If
 
 *14
 
 it is the first, then clearly the condition of the property was not such as it has since become, and as it is insisted by the respondents, it shall continue to be. And we think that it must be so held. As between parties and their privies, the deed relates back to the date of the contract of sale to Brown.
 
 (Jackson
 
 v.
 
 Bull,
 
 1 John. Cases, 81, Sheppard’s ed., and cases in notes.)
 

 Hasbrouck was bound to convey, and that in accordance with this contract. His deed was but a consummation of the contract of sale. It must contain all that could be required by the contract, and it could properly contain nothing more. As the contract contained no reservations, he could insert none in the deed; and as the contract bargained for nothing in express terms as to the water privileges, nothing as to them could be required or permitted in the deed. The giving of the deed by him and the acceptance of it by Smith was not a contracting between them in reference to the condition of the property as it was at the date of the deed.
 

 Smith by his assignment from Brown of the contract and the deed in pursuance of it, got no greater right than Brown had under it. And as Brown was himself, after the making of the contract, the author of all the change in the condition of the property, which makes what is now its great value, he could not claim that the taking of a deed by him from Hasbrouck in pursuance of his agreement, was a contract by them in reference to the property in its changed condition. Nor could Smith as his assignee, demanding a deed from Hasbrouck in conformity with the contract, and having no greatei rights under it than Brown had, make such claim. Hasbrouck was precluded from working any change in the condition of the whole tenement, which would injuriously affect the property contracted to Brown, as it was when the contract of sale was made. Bor it was in reference to its condition then that he and Brown contracted. But he was not precluded from making any change in the parts of the whole tenement retained by him which, would alter the condition of that part contracted to Brown, given to it by the act of Brown
 
 *15
 
 after tho contract was made. And the plaintiffs as the grantees or successors of Brown and of Smith are affected as they were, and have obtained no greater rights than they had.
 

 Nor for the same reasons did the right to the use of the pond and flume pass as an incident or appurtenance to the premises conveyed. It is, indeed, a general rule that upon a conveyance of land, whatever is in use for it as an incident or appurtenance, passes with it.
 
 (Huttemeier
 
 v.
 
 Albro,
 
 18 N. Y., 48.) The law, it is there said, gives such a construction to conveyance, in view of what is thus used for the land as an incident or appurtenance, that the latter is included in it; and that it is a question of construction having reference to its terms and the practical incidents belonging to the grantor of the land at the time of the conveyance. But we have shown that in this case the conveyance relates to the date of the contract of sale, and is to be construed in reference to that time and the practical incidents belonging to the grantor at that time. So referring, the right claimed was not then in use for it as an incident or appurtenance. It did not pass with the grant.
 

 We think that this consideration has been overlooked in the courts below, and that the judgments there have been placed upon a view of the condition of the premises at the time of the execution of the conveyance, and of the practical use of the pond and flume at that time. In our judgment this was erroneous.
 

 The judgment appealed from should be reversed and a new trial ordered, costs to abide the event.
 

 Nil concur save Peckham, J., who did not sit.
 

 Judgment reversed.