EDWARD SIMMONS et al., Respondents, *v.* THOMAS CLOONAN et al., Appellants.

Where the owner of an entire estate conveys a portion thereof, the purchaser takes the same with all the incidents and appurtenances which appear at the time of the sale to belong to it, as between it and the portion retained.

It is not essential to the application of this rule that at the time of sale the apparent incidents should be in actual use by the vendor, in connection with the portion conveyed ; knowledge on his part of their existence is sufficient, and this may be shown otherwise than by actual use.

The incidents which pass as appurtenances must be open and visible, and when so, knowledge will be inferred.

*Nicholas* v. *Chamberlain* (1 Cro. Jac. 121) distinguished.

The appurtenances which pass in such case are not limited to those absolutely necessary to the enjoyment of the property conveyed; it is sufficient if full enjoyment of the property cannot be had without them.

H. being the owner of premises upon which was a mill known as "The Old Mill," and a dam and reservoir, the water from which was conducted to the mill by a flume, conveyed "The Old Mill" to B., the deed granting the right to use the water of the reservoir for the benefit of the mill; with the condition, however, that in case the mill should not be kept in use the water-privileges and right of flowage should cease and revert to H. H. subsequently contracted to sell and convey to B. a portion of the lands lying between "The Old Mill" and the reservoir; upon which B. erected a new mill, taking the water from the reservoir for its use. B. subsequently assigned his contract back to H., and released the title acquired under it. H. thereupon, without reference to the contract, conveyed to S. the premises embraced therein, with appurtenances, as to which nothing was said in the contract. The Old Mill was afterward destroyed by fire, and was not rebuilt. H. conveyed the lands upon which was the reservoir to defendant C., who proceeded to fill up the reservoir and remove the flume. In an action to restrain the doing of this, *held,* that as by the assignment of the contract to H. he became reinvested with the entire title, freed from the equities of the contract, the date of the deed to S. became the date of the sale, and the water-power then in use for the mill, and visibly incident and appurtenant thereto passed by the deed; and that therefore the action was maintainable.

*Simmons* v. *Cloonan* (47 N. Y. 3) distinguished.

The assignment from B. to H. in terms authorized the latter to convey to S., and the conveyance was in pursuance of an arrangement between B. and S.; the consideration of the deed was about the contract price, with interest, unaffected by the improvements put on the land by B. *Held,* that all the facts justified a finding that the intent of the parties was, not simply to carry out the old contract, but that the sale should bear the date of the deed, and that the water-power should pass as appurtenant.

B. fitted the mill so erected by him with steam power, to be used when the water supply was insufficient. *Held,* that this did not prevent the passing, under the deed to S., as appurtenant, of the right to use the water, as the water-power was necessary to the full enjoyment of the property.

(Argued June 4, 1880; decided September 21, 1880.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiffs entered upon the report of a referee. (Mem. of decision below, 7 Hun, 470.)

This action was brought to restrain the defendants from interfering with the alleged right of plaintiffs to the use of the water from a reservoir or pond upon lands belonging to defendant Cloonan.

The case upon a former appeal is reported in 47 N. Y. 3. The substance of the facts, as found by the referee, is as follows:

In March, 1850, Jansen Hasbrouck, being the owner of certain lands in the village of Rondout, upon which was a mill, called "The Old Mill," the pond of which was supplied with water brought by a flume from a reservoir above, conveyed the old mill and pond to Elihu Brown, "with the right and privilege to use the water of the reservoir dam above for the purpose of the old mill," conditioned, however, that said right and privilege should cease and revert back to Hasbrouck in case Brown or assigns did not keep the old mill in use. In June thereafter Hasbrouck entered into a written contract with Brown to sell and convey to him a portion of the lands lying between the premises so conveyed and the reservoir, for the sum of $500. The lands covered by the contract were described by metes and bounds, and made no mention of any water rights, privileges or appurtenances. Soon after the contract was executed, Brown commenced the construction of a mill upon the lands described in the contract, which was completed the next year, and was in the first place, operated by water taken from the flume and reservoir. Afterward Brown put a steam engine into the mill, and when there was insufficient water it was operated by steam. In July, 1853, in pursuance of an arrangement between Brown, Hasbrouck and Joseph S. Smith, Brown executed a writing, indorsed upon his contract, by the terms of which he assigned, transferred, released and set over to Hasbrouck all his right, title and interest in and to the contract and the lands therein described, and authorized Hasbrouck to convey them to Smith. Hasbrouck thereupon deeded the premises to Smith, the deed being for the expressed consideration of $638. The premises were described in the deed the same as in the contract, with

the addition of the words "with appurtenances." The referee found that at the time the deed was executed the water privilege and reservoir were openly and visibly in use for the operating of the old mill; that by the conveyance from Hasbrouck to Smith the former intended to convey, and the latter believed he was receiving, a conveyance of the new mill lot, with the water-privilege and use of the reservoir, as the same was then and had been in use since the completion of the new mill; also, that at the time of the said conveyance Brown was operating the old mill with water from the reservoir and flume, and that he and his assigns continued so to do until 1862, when said old mill was destroyed by fire, and was not thereafter rebuilt. Plaintiffs became subsequently the owners of the new mill property. The top of the dam forming the reservoir was one of the streets of said village. In 1867 the defendant Cloonan was the owner of the lands upon which the reservoir was situated. The trustees of said village of Rondout in that year passed a resolution to construct a new culvert under and across the street, and to fill up the old one, which was the head of the flume. Defendant Cloonan took the contract for the work, notified plaintiffs not to use the water any more, and began to draw off the water from the reservoir, and to fill up the same. The referee found that the "new mill" lot, with the water-privileges, was worth, at the time of the commencement of the action, about $11,500, without the water-privileges, about $1,000.

Further facts appear in the opinion.

*S. L. Stebbins* for appellants. No water right was created by any thing done by Brown, while in possession under the contract, not at its date appurtenant to the lot, no such right passed to Smith by the deed from Hasbrouck and wife to him. (*Lampman* v. *Milks*, 21 N. Y. 515; Williams on Real Property [2d Am. ed.], 290 [* 269].) As the mill is run by steam at least half the time, it can be operated by steam at all times, and the alleged water privilege cannot be said to be absolutely necessary to the enjoyment of the property. (*Lampman*

v. *Milks*, 21 N. Y. 515, 516.) The trustees of the village of Rondout were invested with all the powers of commissioners of highways therein, and their duties as such were absolute. (2 Laws of 1867, p. 1389, § 41 ; *Hyatt* v. *Trustees of the village of Rondout*, 44 Barb. 385, affirmed by the Court of Appeals ; 2 Laws of 1867, 1390, §§ 41, 43 ; *Mosier* v. *Hilton*, 15 Barb. 657, 663, 666.) The referee erred in refusing to allow the defendants to give any direct evidence of Hasbrouck's intent. (*Kerrains* v. *People*, 60 N. Y. 220; *Seymour* v. *Williams*, 4 Kern. 567 ; *Forbes* v. *Waller*, 25 N. Y. 430 ; *Tracy* v. *McManus*, 58 id. 258 ; *McKown* v. *Hunter*, 30 id. 625.)

*William Lounsbery* for respondents. The right to use the water was an appurtenant to the mill and passed in the deed of July 1, 1853, by the words "with the appurtenances." (*Lampman* v. *Milks*, 21 N. Y. 507 ; 47 id. 9 ; *Robbins* v. *Barnes*, Hob. 131.) Upon a conveyance of land, whatever is in use for it, as an incident or appurtenance, passes with it. (*Huttemeier* v. *Albro*, 18 N. Y. 48 ; *Thayer* v. *Payne*, 2 Cush. 327.) No consequence adverse to the plaintiff's claim can be given to the possession by Brown of the mill, at the time of the deed from Hasbrouck to Smith. (1 R. S. 738, § 136 ; id. 723, § 8 ; *Humbert* v. *Trinity Church*, 24 Wend. 587.) The acts of the defendants cannot be justified under the municipal authority of the village of Rondout. (*Clark* v. *Mayor, etc., of Syracuse*, 12 Barb. 32.)

FINCH, J. The facts in this case have changed since it was last before us. Then it appeared that Brown had assigned his contract for the purchase of what is called the new mill lot to Smith, under whom the plaintiffs claim, and, therefore, that the deed of Hasbrouck to Smith was in fulfillment of that agreement, and the date of the sale to Smith was the date of the contract. Inasmuch as at that date the new mill was not in existence, and no water right was in any manner in use upon the lot, or appurtenant to it, the conclusion necessarily

followed that such right did not pass by the deed to Smith, and the plaintiffs had failed to establish their claim. (47 N. Y. 3.)

Now, the proof of an assignment of this contract from Brown to Smith is omitted, and in addition it is shown that, prior to the conveyance of Hasbrouck to Smith, the contract in question was first assigned by Brown to Jonathan Hasbrouck, and then, the parties being dissatisfied with that arrangement, such assignment was canceled, and the contract thereupon extinguished, by an assignment from Brown to Jansen Hasbrouck, the vendor, who, being vested with the entire title, and freed from the equities of the contract, conveyed without reference to it, so that the date of the deed became the date of the sale, and the water-power, then in use for the mill, and visibly incident and appurtenant to it, passed by the deed to Smith.

The defendants, however, contend, and there is much that favors their position, that these new facts change only the form and not the substance of the transaction; that the deed was given in accordance with, and by reason of, Brown's equitable right; that the assignment of Brown to Hasbrouck, on its face, authorized the latter to convey to Smith; that the consideration in the deed was very nearly the contract price with its interest, and was totally unaffected by the large and valuable improvements put on the land by Brown; that the deed to Smith was in pursuance of an agreement between the two for the further security of the latter as a creditor of the former; that at the time of the conveyance nothing was said between vendor and vendee about the water-power; and that all the papers should be read together as constituting a single complete transaction.

In reply, the conceded fact of the assignment of the contract to Hasbrouck, and as a consequence its utter extinguishment, and the restoration of a full and unclouded title to him are pressed upon us. Why, if it was only meant that Hasbrouck should convey to Smith, as the assignee of Brown, was the ordinary mode of an assignment of the contract to the former, giving a right to a deed from Hasbrouck, departed from? Why,

if the contract was to remain in force and retain vitality, adopt a process that legally annulled and destroyed it? The parties had the right to abandon the old contract. They did abandon it. They had the right to make a new arrangement. They did make it. The word "appurtenances" was not in the old contract. It is in the deed. The value of the mill lot, without the water right, is about $1,000; with the water right, $11,000. Would not Brown and Smith desire to secure it safely, so long as Hasbrouck was content?

These conflicting views were pressed upon us with great force and ability on each side, and with much more of detail than we need to repeat. The facts apparently admit of either construction, and the inquiry now presented is, which shall prevail?

It seems to us that the question which underlies the discussion is one of intent. If, notwithstanding the form of the transaction, the parties really intended nothing more than to carry out the old contract, then the sale must be referred back to the date of that, and the rule must be applied which governed our former decision. If, on the other hand, by the surrender of the contract to Hasbrouck, and his conveyance of the lot with the appurtenances, it was intended that the sale should bear that date, and the water-power pass as appurtenant a different result will be reached. (*Huttemeier* v. *Albro*, 18 N. Y. 48; *French* v. *Carhart*, 1 id. 96.)

Now the referee has found as a fact in the case that "by the conveyance from Hasbrouck and wife to Smith, Hasbrouck intended to convey, and Smith believed he was receiving, a conveyance of the new mill lot and the water privilege and use of the reservoir, as the same were then and had been since the completion of the new mill in actual use in connection with it." If this finding is indeed a conclusion of fact, it would settle the question in this court; for, however debatable it might be, we could not at all say that it was unsupported by the evidence. In a case somewhat like this in one direction (*Curtis* v. *Ayrault*, 47 N. Y. 81), we held that whether the vendee of the land contracted for it in reference to its condi-

tion relatively to the situation of the water and ditch at the time of the sale was a question of fact for the jury.   In another case ( *Voorhees* v. *Burchard*, 55 N. Y. 104), while we ruled that the intent of one of the parties to a deed could not change its construction, yet the prevailing opinion quite plainly indicates that a finding by the referee of the mutual and concurring intent of both parties would go far to control the construction.   And we affirm a judgment unless it appear that a rule of law has been violated, after assuming that the facts have been viewed in the most favorable light which the case will admit.  (*Phelps* v. *McDonald*, 26 N. Y. 82.)   But whether regarded as a question of fact or of law, or of both, we are inclined to concur with the conclusion of the referee and of the General Term.   The changed arrangement strongly indicated a change of purpose.   The deed was phrased to pass appurtenances, while the contract was not.   Hasbrouck was made in fact sole master of the situation, and could have confiscated all Brown's valuable improvements if he had so chosen. In all probability those improvements, which largely enhanced the value of the property, but were dependent upon a water-power to which Brown had no title, were put upon the land under some understanding with Hasbrouck, or at least with his tacit or inferred assent.   It is difficult to believe that Brown would have built his mill to run by water, and freely spent his capital in that direction, and boldly utilized the reservoir without some sort of understanding.   But in any event, Hasbrouck, as an honorable and just man, might very well feel, when he conveyed to Smith, that his power to ruin the property, and Brown also, by withholding the entire water right, was one that he ought not to exercise ; and, having full legal liberty to act as he pleased, chose to recognize the moral or honorable duty which rested upon him, and so passed, and as the referee finds, intended to pass, the water-power as appurtenant to the land.

We feel, therefore, compelled to hold that the date of the delivery of the deed was the date of the sale, and that the water-power at that time existing as incident and necessary to

the enjoyment of the mill lot passed to Smith and through him to the plaintiffs (*Lampman* v. *Milks*, 21 N. Y. 505), unless certain other points raised by the defendants are well taken.

Founding their argument upon the language of the opinions in *Nicholas* v. *Chamberlain* (Cro. Jac. 121), cited by this court in its former decision, it is urged that something more than the mere unity of the legal title with the then present existence of its visible incidents is necessary to cause the appurtenances to pass by the deed, or to make them lawfully, and properly such: that in this case there must have been, at the date of Hasbrouck's deed to Smith, not only ownership in the grantor both of reservoir and lot, but also occupation, and use of them by him in connection with the water-power alleged to have been conveyed, and that no such occupation or use of the new mill lot with its incidents by Hasbrouck was proven. We do not think the case cited goes quite so far as claimed. The doctrine relied on was not essential to its decision, and certainly has not been recognized in our own reports. Closely examined, we think the case holds no more than this, that there must be knowledge by the owner of the existing incidents. "Not taking conusance of any such erection, nor using it," is the language of POPHAM, Chief Justice. Using the water-power would show knowledge of its existence as an incident of the property in the hands of the grantor. The same idea is indicated by our own rule that the incidents which pass as appurtenant must be "open and visible," from which fact the knowledge of their existence by the grantor is a natural inference. But such knowledge may be shown otherwise than by the grantor's actual use, and in this case most certainly existed. Indeed, the referee finds that "at the date of the deed to Smith the water privilege and reservoir were openly and visibly *in use* for the driving of the wheel of the new mill." It is true that this finding is qualified by an after finding, made upon defendant's request, that at this date Hasbrouck was not in the "actual" possession. But even the learned counsel for the appellants, in his strong and forcible argument, concedes that

after Brown's surrender and cancellation of his contract, Hasbrouck was in the constructive possession of the property, so that the use of it, which the referee finds, was at least under the grantor and presumably by his authority. We do not, however, decide that actual use by the grantor of the incidents or appurtenances is essential to their passing by his deed. We prefer to adhere to our own authorities which have imposed no such condition.

It is further argued that under our own decisions, the appurtenances which pass must be such, and such only, as are "absolutely necessary to the enjoyment of the property conveyed," and that the mill in question having been fitted with steam-power for use when the water-supply was insufficient, it cannot be said that the use of the reservoir was absolutely necessary. The argument does not convince us. The full enjoyment of the property could not be had if the water-power was removed. One important force for driving its machinery would be cut off; and the water-power was, therefore, necessary to the enjoyment of the property. Indeed, it was so much so that the proof shows its value to be almost wholly dependent upon the right to use the water.

A large number of exceptions to the admission or rejection of evidence were taken on the trial. None of them were argued before us, and they do not require any special examination.

The judgment should be affirmed with costs.

All concur.

Judgment affirmed.