### PAINE *v.* CHANDLER.

*(Supreme Court, Special Term, Livingston County. April 10, 1889.)*

EASEMENTS—SEVERANCE OF TENEMENTS—DIVERSION OF WATER.

Defendant, the owner of two adjoining farms, conveyed one of them, with its appurtenances, to plaintiff. For many years there had been a spring on the farm retained by defendant, which was walled up so as to hold the water, and from which the water flowed through wooden logs and iron pipes to plaintiff's premises, where it was used for domestic and farm purposes. Plaintiff had no other convenient and adequate supply of water. Defendant was fully aware of all these

facts. Shortly after the conveyance he stopped up the pipe, and cut off plaintiff's supply of water, but immediately removed the obstruction on demand. Afterwards defendant dug a well near the spring, and, by means of a ditch, diverted the water from the spring to the well, and deprived plaintiff of its use. The evidence showed that defendant was amply supplied with water, and that the diversion of the stream was wanton and malicious. The spring was not mentioned in the deed to plaintiff. *Held*, that a right to the supply of water from the spring passed with the deed to plaintiff, and defendant would be compelled to restore it as it was at the time of the conveyance.

Action by Wells Paine against Jeremiah W. Chandler to compel defendant to restore a stream of water flowing from defendant's premises upon the premises of plaintiff, and to restrain further interference with it. In March, 1886, the defendant was the owner of two contiguous tracts or parcels of land situate in the town of Nunda, Livingston county, N. Y., one of which tracts, consisting of about 92 acres, was known as the "Grines" farm, and the other, containing about 89 acres, was designated as the "Paine" farm. On the 9th day of April, 1886, the defendant executed and delivered to the plaintiff a warranty deed of the Paine farm, and he has ever since remained the owner, and in the occupancy, of the premises thus conveyed. At the time of such conveyance, and for many years prior thereto, there had existed a valuable spring of water upon the Grines farm, which had been walled up in such a manner as to retain the water, and the same was conducted by means of wooden logs and iron pipes to the barn-yard on the Paine premises, where it was used for domestic purposes, watering stock, etc. Defendant was well aware of the existence of this spring, and that its waters were conducted to the last-mentioned premises, and used in the manner specified, and also that their use was essential to the full enjoyment of the Paine farm, upon which there was no other adequate supply of water for the use of the stock ordinarily kept there, except such as was obtained at considerable inconvenience, from a creek which ran through a gully some 60 or 70 rods from the barns where the stock was kept. Plaintiff was in the occupation of the Paine farm, and in the use and enjoyment of the water from the spring in question, at the time of his purchase from the defendant. In the month of May, 1886, the defendant stopped up the pipe through which the water was conducted onto plaintiff's premises, at a point near the dwelling-house upon the Grines farm, but such obstruction was removed immediately, upon a demand being made to that effect by the plaintiff. Thereafter, and in the month of August, 1887, defendant dug a well upon the Grines premises, about 20 feet south of the spring, and in December following he dug a ditch parallel with the pipes leading from the spring, in such a manner as to intercept and cut off the water from the spring and conduct it into the well. By means of this diversion the water in the spring was diminished to such an extent that it did not reach the mouth of the pipe which had formerly conducted it onto plaintiff's premises, and plaintiff has ever since been wholly deprived of its use. The excavations made by defendant are claimed to have been necessary for the purpose of supplying his house with water from this spring, but the evidence establishes very clearly that there was an abundance of good water available for this purpose without interfering with that in the spring, and that such interference proceeded from a wanton and malicious motive. There was no mention made of this spring in the deed to plaintiff, either by way of grant or reservation, but such deed contained the ordinary words incidental to a conveyance, viz., "together with all and singular the hereditaments and appurtenances thereto belonging, or in any wise appertaining," and the usual covenant of warranty.

*F. C. Peck* and *E. A. Nash*, for plaintiff. *D. S. Robinson* and *C. J. Bissell*, for defendant.

ADAMS, J. The facts of the case seem to bring it squarely within the well-settled principle that where one of two tenements, or a portion of an entire

estate, is sold, the purchaser takes the tenement or portion sold with all the benefits and burdens which manifestly appear, at the time of the sale, to belong to it, as between it and the property which the vendor retains. *Nicholas* v. *Chamberlain*, Cro. Jac. 121; *Robbins* v. *Barnes*, Hob. 131; *Lampman* v. *Milks*, 21 N. Y. 505; *Curtiss* v. *Ayrault*, 47 N. Y. 73; *Rogers* v. *Sinsheimer*, 50 N. Y. 646; *Roberts* v. *Roberts*, 55 N. Y. 275; *Simmons* v. *Cloonan*, 81 N. Y. 557. It is insisted, however, that this rule has been somewhat modified by the later decisions, and the attention of the court is directed to the cases of *Griffiths* v. *Morrison*, 106 N. Y. 165, 12 N. E. Rep. 580, and *Root* v. *Wadhams*, 107 N. Y. 384, 14 N. E. Rep. 281, as authorities for this contention. It is true that in these cases the court distinguishes between continuous and discontinuous easements, and holds that in regard to the latter only such as are absolutely necessary to the enjoyment of the estate pass upon a severance of tenements by the owner; but this is really nothing more than a reiteration of the doctrine of *Lampman* v. *Milks*, which in turn is founded upon a provision of the French Code, as well as the common law cases, and the analogy between these several authorities seems to suggest a common origin. The substance of the distinction between the two classes of easements is stated in the opinion of SELDEN, J., in *Lampman* v. *Milks*, to be that such as are not dependent for their enjoyment upon any actual interference by man are continuous in their nature, while those, the enjoyment of which cannot be had save by the interference of man, are discontinuous, and pass upon a severance of tenements by the owner only when absolutely necessary to the enjoyment of the property conveyed.

A very recent decision by the supreme court of New Jersey defines the rule applicable to easements which pass by implication upon a severance of tenements in a very clear and comprehensive manner, and states that three things are essential to their existence: *First.* A separation of the title; *second*, that before separation takes place the use which gives rise to the easement shall have been so long continued, and so obvious or manifest, as to show that it was meant to be permanent; and, *third*, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained, but that the degree of necessity is such merely as renders the easement essential to the convenient and comfortable enjoyment of the property, as it existed when the severance was made. *Kelly* v. *Dunning*, 10 Atl. Rep. 276. It has likewise been recently held by the court of appeals in this state that the element of necessity is supplied if it appears that the property conveyed cannot be fully enjoyed without subjecting the servient estate to the easement. *Simmons* v. *Cloonan, supra*. All the requirements thus held to be essential to the existence of a servitude are found to be present in the case under consideration. The title, which was formerly in the defendant, has been separated. Before such separation took place the use of the waters from the spring upon the Grines farm by means of pipes below the surface of the soil was so obvious and constant as to show that it was meant to be permanent, and the easement thus created, if not absolutely necessary, is certainly essential to the full beneficial enjoyment of the land granted. It follows, therefore, that, whether it comes within the definition of a continuous or discontinuous easement, the defendant, when he severed his tenements, charged the portion retained by him with the servitude of a stream of water conducted by artificial means from the spring in question to the plaintiff's barn-yard.

It is contended, however, by the learned counsel for the defendant, that, even if the plaintiff's deed did convey a right to the use of the waters so conducted from the spring upon the servient tenement, the defendant cannot be compelled to furnish the relief sought by this action, inasmuch as he has not interfered directly with the water in the spring or pipes; but that whatever interference there has been was occasioned by excavations upon his own land, in the vicinity of the spring, which he had the right to make, although

they did result·in diminishing the water in the spring, to plaintiff's discomfort and injury; and in support of this contention the case of *Bliss* v. *Greeley*, 45 N. Y. 671, is cited. It is not difficult to discover a distinction between the doctrine of that case and this, I think, and it is the same as is pointed out by RAPALLO, J., in his opinion in the case of *Manufacturing Co.* v. *Veghte*, 69 N. Y. 16. In the case relied upon by defendant the parties were regarded in the same light as adjacent owners, and the rule was applied which permits one party to.dig upon his own land although the effect of his digging is to cut off the water from a spring upon adjacent land by means of percolation. Furthermore, the grant was merely of the right to the spring, and secured no greater privilege than would have accrued to the grantee if he had been the owner of the land on which it was situated. Here, however, there was a grant under circumstances which implied the right to a permanent use of the water, which at the time of the grant was being conducted from the spring onto plaintiff's premises. This implication was really equivalent to a covenant, in my opinion, and, if so, any interference with the water, whether directly or indirectly, was a violation of such covenant, and therefore unwarranted. *Manufacturing Co.* v. *Veghte, supra; Lasala* v. *Holbrook*, 4 Paige, 169. If, however, this may be regarded as an extreme construction of the principle which governs the creation and maintenance of a servitude, there is another·answer to the defendant's claim of rightful interference with the easement in question, which is that such interference proceeded from a malicious motive, and was designed to accomplish the precise result attained. But it is insisted the defendant was only asserting his rights, and the courts will not inquire into the motives actuating a person in the enforcement of a legal right. As an abstract statement this proposition is doubtless correct. *Phelps* v. *Nowlen*, 72 N. Y. 39; *Kiff* v. *Youmans*, 86 N. Y. 324. It has no application, however, to the case in hand, as will readily be observed by a careful reading of the opinion in the former of the cases above cited, by which it appears that the act complained of was the digging of a ditch by the defendant through an embankment surrounding a spring upon his own land, which embankment had theretofore retained the water so as to.fill a well upon the plaintiff's land, and the digging of the ditch diverted the water in such manner as to destroy this well. The plaintiff had no right, by prescription or otherwise, to the water from the spring, and its use was enjoyed by the mere'permission or license of the defendant, which he could revoke at his pleasure. The digging of the ditch was therefore simply an assertion of his legal right to revoke the license, and it consequently was a matter of no moment what motive actuated him, for, as is distinctly stated by the court, he interfered with no right enjoyed by the plaintiff. In the case under consideration the facts are essentially different. The plaintiff had a legal right to the use of the water from the spring upon defendant's land, and this right had been conferred upon him by the defendant. Such being the case. while it may not have deprived the defendant of the right to the enjoyment of his premises, and to the underground waters upon them, it nevertheless did require of him that he should exercise that right in good faith, and with due regard to the rights of the plaintiff. The distinction here made is one which is recognized in many of the cases in the books, and it has been expressly held that while an act, legal in itself, which violates no right of another, cannot be made actionable by reason of the motive which induced it, yet, where it does violate some right, the old maxim, *sic utere tuo ut alienum non lædas*, applies. *Chasemore* v. *Richards*, 7 H. L. Cas. 387; *Chatfield* v. *Wilson*, 28 Vt. 49; *Bliss* v. *Greeley, supra*. No case can be found which holds that a person may confer a right or privilege upon another, and then maliciously destroy such right either by direct or indirect interference with the same; and this court does not propose to be the pioneer of any such inequitable doctrine.