JABEZ   FURNER, APPELLANT, v. OTIS SEABURY, RESPONDENT.

*Grant of a certain quantity of water from a spring — right of the party entitled thereto to put the spring in a condition to supply it.*

Under a grant of the water of a certain spring, conveying "all the water of said spring which can be conducted through a one-half inch lead pipe," a pipe was laid by the party entitled to such water, which, as it was claimed, ceased to convey the water by reason of excavations made, by the owner of the land, in the neighborhood of the spring.  The owner of such water right thereupon proceeded to lower the pipe at the spring in order to obtain water therefrom, and having been interfered with, by the owner of the land upon which the spring was, he brought an action asking for an injunction to prevent further interference and for damages.

*Held*, that such right to the water carried with it the privilege of making changes in the spring and putting it in such condition as that the owner of the water-right would receive therefrom the quantity of water specified in the grant, and thus be enabled to enjoy the full benefit thereof; and that in an effort to secure that end the owner of such right was entitled to the protection of a court of equity.

APPEAL by the plaintiff Jabez Furner from a judgment of the Supreme Court, entered in the office of the clerk of the county of Madison on the 2d day of June, 1890, upon a decision made at Special Term dismissing the complaint and dissolving an injunction.

The complaint alleged that the plaintiff was the actual owner and in possession of certain water privileges, relating to the water of a certain spring situated upon the lands of the defendant, and west from the dwelling-house of the plaintiff, together with the right and privilege of conveying said water over the lands of the defendant in a three-fourths inch pipe to a certain designated point, and from there in a

one-half inch lead pipe to and upon the premises of the plaintiff, and that said water had been so conducted to the premises of the plaintiff for upwards of twenty years.

That, during the five years preceding the pendency of this action, the defendant had wrongfully interfered with said spring upon his own land, and at a point twenty-five feet distant from said spring, the waters of which the defendant had theretofore sold and conveyed, and at a point below said spring, in such a way as to draw off and drain the water from said spring and divert it from its due and proper channel, as the same had theretofore been conveyed and granted by the defendant, through said pipes, and to the house and premises of the plaintiff.

That the plaintiff thereafter lowered his said pipes leading from said spring in order that he might convey said water to his premises, and thereupon the defendant wrongfully and unlawfully drew off, cut off and disconnected said pipes which conveyed said water from said spring to plaintiff's premises, and deprived plaintiff of the use of said water, for which the complaint asked judgment for $1,000 damages, and for costs, and that pending the determination of the action the defendant be enjoined and restrained from further interference with said spring or pipes leading therefrom, or in anywise interfering with the flow of water from the same to the plaintiff's premises.

The judgment provided as follows : " That the plaintiff be, and he is hereby directed to fill up the excavation made by him at the spring mentioned and described in said decision, on the 17th day of April, 1889, and to replace in said spring a box similar to the one taken therefrom by him at the time he made said excavation, and to restore said spring to the same condition it was in at the time he commenced making said excavation on the said 17th day of April, 1889."

On the 20th day of August, 1852, the defendant owned a farm in the town of Hamilton, and he has remained the owner and in possession of the same ever since. At that date William Colcon owned a farm adjacent to the defendant's, which has since been aquired by the plaintiff, with all the rights and appurtenances thereunto belonging. On the 20th day of August, 1852, said Colson and this defendant executed an instrument under their respective hands and

seals, which was by them duly acknowledged on that day and recorded on the 10th of January, 1855, which contained the following language: "Witnesseth, whereas, the said parties at the date of the ensealing and delivery of these presents are respectively seized in fee of and in two contiguous tracts, pieces or parcels of land, with the appurtenances in the town of Hamilton aforesaid; and whereas, there is a spring of water situated in and upon the land of the party of the first part; said spring is situated west from the dwelling-house of the party of the first part, it being nearly in the center of the farm owned by the party of the first part, which spring is owned by the party of the first part. Now, therefore, this indenture witnesseth, that the party of the second part for and in consideration and agreement on the part of the first party, that he, the party of the second part, hereby agrees to convey the water from said spring in three-fourths inch lead pipe, which is to be laid under ground of sufficient depth to preserve said pipe from injury by frost or other causes. The party of the second part is to carry said water as above described into the meadow of the party of the first part, in consideration of the foregoing agreement on the part of the party of second part; the party of the first part has hereby granted, bargained, sold, released and confirmed, and by these presents does grant, bargain, sell, release and confirm, unto the said party of the second part, his heirs and assigns, all the water of said spring which can be conducted through one-half inch lead pipe; the party of the second part has the right to all the water which can run through said one-half inch pipe, said half-inch pipe to be inserted at the termination of the three-fourths inch pipe as before described, to be constructed and kept in repair at the cost, charges and expense of the party of the second part, to have and to hold all and singular the same easement and privilege to the said party of the second part, his heirs and assigns forever, as appurtenances belonging to his and their lands as aforesaid.

"In witness whereof we have hereunto set our hand and seals the day and year first-above written.

"OTIS SEABURY.   [L. S.]
"WM. COLSON.     [L. S.]

"Signed, sealed and delivered in presence of A. M. COVEY."

It was conceded on the trial "that at the time the above instrument was executed William Colson was the owner of the farm of about one hundred and forty acres, and was at that time in possession thereof, and which was contiguous to the lands of the defendant, and are the lands mentioned in the instrument as belonging to Colson."

It was admitted that the title to the premises, upon which the spring in question is located, being the spring referred to in the above-described instrument, was in the defendant at the time the instrument between him and Colson, dated August 20, 1852, was executed, and that the defendant has ever since been the owner of said premises.

It was further admitted "that under the grant from Otis Seabury to William Colson in evidence, William Colson, soon after the date of the grant, to wit, the 20th of August, 1852, laid a $\frac{3}{4}$-inch lead pipe connecting it in the spring, mentioned in the grant, and running thence to the defendant's meadow, mentioned in the grant, at which point William Colson connected a $\frac{1}{2}$-inch lead pipe, mentioned in the grant, and conveyed water thence to his premises. It was also conceded that, on or about the year 1854, the defendant attached a $\frac{1}{2}$-inch lead pipe at a point above and nearer the spring than where Colson's $\frac{1}{2}$-inch pipe joined to the $\frac{3}{4}$-inch pipe, and through the $\frac{1}{2}$-inch pipe thus attached conveyed water to his, the defendant's, premises until about the year 1886, when he disconnected it."

At the request of the plaintiff it was found "that plaintiff at no time took or claimed the right to take more than one-half inch of water and that the pipe at all times, laid and maintained by him, was a $\frac{1}{2}$-inch lead pipe." The trial court refused to find, as matter of law, "that defendant, by his grant, rendered his lands subject thereto, and that any interference with plaintiff's obtaining the half-inch of water granted was actionable, and defendant was liable to damages therefor;" and also refused to find "that defendant, by his grant, included everything that was essential to its enjoyment, and all the means to attain the thing granted, and all the fruits thereof were granted inclusive with the grant of the thing itself, and that plaintiff was authorized to lower his pipe and dig out the spring to obtain the thing granted ($\frac{1}{2}$ inch water)."

*John E. Smith* and *L. P. Fuess*, for the appellant.

*Mason & Cushman*, for the respondent.

HARDIN, P. J.:

Plaintiff has succeeded to the rights acquired by William Colson under the grant and easement executed by the defendant on the 20th of August, 1852. He is entitled to all the rights, privileges and enjoyments mentioned in that instrument. While the instrument is indefinite in respect to the location of the pipe to be taken from the spring mentioned in the instrument, three-quarters of an inch in diameter to a certain point in the meadow of the defendant, where the union was to be made of this pipe with the half-inch in diameter to carry the water across the remaining portion of the defendant's premises to the lands of Colson, yet, as the parties made a practical location and usage laying the both pipes in a track assented to by the parties to the instrument, and enjoyed by them, that portion of the agreement became definite and certain by reason of acts of the parties in the premises. (*Tyler* v. *Cooper*, 47 Hun, 94; S. C., 31 N. Y. St. R., 369.)

When the instrument of 1852 was executed Colson and the defendant owned adjacent farms in the town of Hamilton, as the instrument recites; and the instrument also recites that " there is a spring of water situated in and upon the land " of the defendant; and it also recites that " said spring is situated west from the dwelling-house of the party of the first part." The instrument also recites a consideration moving from Colson to the defendant, which was an agreement on the part of Colson binding him " to convey the water from said spring in ¾-in. lead pipe, which is to be laid under ground of sufficient depth to preserve said pipe from injury by frost or other causes." The evidence discloses that the consideration or agreement was fulfilled, as Colson, shortly after the agreement was entered into, laid a pipe so as to conduct the water from the spring, a distance of some twenty rods, having a size of three-quarters inch, and for some eighty rods of the size of one-half inch in diameter, in accordance with his agreement to carry the water " into the meadow of the " defendant, which, in the instrument, is declared in express words to be the consideration for the grant made by the defendant to Colson and his assigns and heirs. The instrument then proceeds to state, viz.: " The party of the first part has hereby granted, bargained, sold, released and confirmed, and by these presents does grant bargain, sell, release and confirm unto the said

party of the second part, his heirs and assigns, *all the water of said spring* which can be conducted through ½-inch lead-pipe ; the party of the second part has the right to all the water which can run through said ½-inch pipe, said half-inch pipe to be inserted at the termination of the ¾-inch pipe as before described, to be constructed and kept in repair at the cost, charge and expense of the party of the second part, to have and to hold all and singular the same easement and privilege to the said party of the second part, his heirs and assigns forever, as appurtenances belonging to his and their lands as aforesaid." The language which we have quoted is definite and certain in many of its parts. (1.) It contains words indicative that the quantity of water specified is granted, sold, released and confirmed to the second party to the instrument. (2.) It is definite and certain, in that it defines the quantity of water covered by the presents, to wit, " all the water of said spring which can be conducted through ½-inch lead pipe." These latter words indicate the size of the conduit to be used, and they bear significantly the idea that the pipe is to be so laid that it will carry all the water that can be conducted through such a pipe. The words "can be conducted" may properly receive significance in considering the manner in which the pipe was to be inserted in the spring, and was to be laid and used to effectuate the intention of the parties. The subsequent language of the instrument does not limit the phrases with which we have already dealt ; it is well chosen to make more clear and definite, if need be, the words already used. It declares, in express words, viz.: " The party of the second part has the right to all the water which can run through said ½-inch pipe." Following these words are those which indicate where the half-inch pipe is to be connected to the one that is three-quarter inch ; and, according to the testimony, the one-half inch pipe was inserted in the three-quarter inch pipe, about twenty rods from the spring. Again, the grant contains the following definite language in respect to the conduit to be used, and the manner of its use, and names the party on whom the burden rests of keeping it in repair, as in the instrument we find the following language in respect to the conduit: " To be constructed and kept in repair at the cost, charge and expense of the party of the second part, to have and to hold all and singular the same easement and privilege to the said party of

the second part, his heirs and assigns forever, as appurtenances belonging to his and their lands as aforesaid." The instrument serves as an express grant, and is itself "the creation of the ease- ment," and in clear language it expresses the nature and extent.. From that language, in connection with the circumstances existing at the time of making the instrument, the nature and extent of the grant is to be determined. (2 Wash. on Real Estate [3d ed.],. 278.) If the construction was doubtful, the interpretation, accord- ing to authority, should be given favorable to the grantee. (*Fisk* v. *Wilber and Others*, 7 Barb., 395.) The language used very clearly casts the burden upon the dominant estate to keep in repair the easement and its incidents. Such is the general rule in respect to easements. Mr. Washburn says (p. 311, vol. 2 [5th ed.], p. 355), viz. : "As a general proposition, the dominant estate is bound to repair the way it enjoys over the servient estate, though the owner of the latter may, by grant or reservation, or by prescription, be bound to make the necessary repairs in order to its enjoyment." The important and substantial thing granted is the use of the water, as well as the privilege of conducting it from the mentioned spring across the prem- ises of the defendant to the premises now occupied and owned by the plaintiff. It is said by Mr. Washburn (vol. 2, p. 319 [5th ed.], p. 366), viz. : "Property in water, in connection with real estate, can only be predicated of its use, which serves by its enjoyment to give a value to the corporeal hereditament with which its use is applied." Under the language of the grant now before us, we are of the opinion that it was the duty of the plaintiff to maintain in repair, not only the conduit, but the spring from which he was granted the privilege of conducting so much water as would flow through a lead pipe one- half inch in diameter. Such burden was cast upon the plaintiff by the exact words of the grant. That burden seems to be in accord- ance with the general rule laid down in respect to enjoyment of ease- ments. It is said by Mr. Washburn (p. 325, vol. 2 [5th ed.], p. 373), viz. : "If one owns the right of a water-course in the land of another, it is incumbent upon him to keep the same in repair, unless the land- owner is bound by some covenant to make repairs. And to this end he has the right, as incident to the principal easement, to enter upon the servient estate and do whatever is necessary to make such repairs, such as digging up the soil and the like, but doing no

unnecessary damage thereby." For the purpose of enabling the plaintiff to enjoy the use of the water covered by the language of the grant, to obtain the same from the spring mentioned, we are of the opinion that he had the right to "repair" the spring; to put it in such a condition as to receive therefrom the quantity of water specified in the grant, and thus enable him to enjoy the full benefit of the rights secured by the grant made by the defendant. The tub which was placed or the box which was inserted in the spring at the place where the water issued was not the spring; the earth which lay adjacent to the tub or the box was not the spring, neither was the rock which was on the westerly side of the aperture the spring. It was said in *Magoon* v. *Harris* (46 Vt., 264), viz.: The word spring, when applied to water, means the formation of water that naturally gushes out of the earth's surface. "A spring of water is a place where water by natural forces issues from the ground." (*Bloodgood* v. *Ayers*, 108 N. Y., 405.) If the lowering of the tub or box a few inches, if clearing the earth from under it fifteen inches and letting the tub down, were acts necessary to secure to the plaintiff the use of such water as would flow through the prescribed pipe, then they were acts which were lawful and reasonable; and after they were performed, and the site put in condition to yield the required quantity of water, the plaintiff had the right to have it remain in that situation. The defendant had not the right to disturb, to interfere or displace the reasonable arrangements made to secure the quantity of water conveyed by the grant. The defendant had undertaken that the owner of the dominant estate should have "the privilege" of "all of the water of said spring which can be conducted through a one-half inch lead pipe;" and, in view of the grant, the plaintiff "has the right to all the water which can run through said one-half inch pipe." In this connection the language used by the court in *Paine* v. *Chandler* (5 N. Y. Sup., 742) is appropriate: "The plaintiff had a legal right to the use of the water from the spring upon defendant's land, and this right had been conferred upon him by the defendant. Such being the case, while it may not have deprived the defendant of the right to the enjoyment of his premises, and to the underground waters upon them, it nevertheless did require of him that he should exercise that right in good faith, and with due regard to the rights of the plaintiff.

\* \* \* No case can be found which holds that a person may confer a right or privilege upon another, and then maliciously destroy such right either by direct or indirect interference with the same ; and this court does not propose to be the pioneer of any such inequitable doctrine."

Attention has been called to *Phelps* v. *Nowlen* (72 N. Y., 39), where it was held that " a party is not liable for the consequences of an act done upon his own land, lawful in itself, and which does not infringe upon any lawful rights of another, simply because he was influenced in the doing of it by wrong and malicious motives ; the courts will not inquire into the motives actuating a person in the enforcement of a legal right." If our construction of the grant, already intimated, is correct, that case does not aid the respondent, who, having conferred a right upon the plaintiff, was not at liberty to infringe upon it by preventing, by direct acts, the plaintiff from the enjoyment of the right secured to him by the grant. Attention has been given to *Bliss* v. *Greeley* (45 N. Y., 671), so much relied upon by the respondent to sustain the judgment before us. In that case there was a limited and specific grant of " the right to dig and stone up a certain spring, and conduct the water therefrom through the grantor's land, by a specified pipe, to the grantee's house, with covenant of warranty." It was held that such a grant " does not render the entire premises servient to the easement ; and the grantor may lawfully sink another spring, but twenty-seven feet distant, although the effect is to render the first one useless." In the course of the opinion delivered in that case it is said " the grant and the covenants of the grantor are the precise measure of the plaintiff's right," and after stating that the grant conferred " the right to dig out and box this spring, and to put a pipe in it," the pertinent question is asked by the judge : " Did he thereby covenant that he would not use the rest of his farm in a farmer-like manner?" and the burden of the opinion is to answer in the negative ; and later on the learned justice says : " This grant prevents the grantor and his assigns from any *substantial interference* with the spring or the pipe. It does not prevent their improvement or use of the residue of the farm."

In *Johnstown Cheese Manufacturing Company* v. *Veghte* (69 N. Y., 23), the case is referred to in the following language, viz. :

" The case of *Bliss* v. *Greeley* (45 N. Y., 671) is cited on the part of the defendant as in conflict with this judgment; but the facts of that case were very different. In that case there was simply a grant of a right to dig and stone up a certain spring and to conduct the water therefrom through the grantor's land, with a covenant of warranty; and the court held that this did not preclude the grantor from sinking another spring on his land at some distance from the one granted, although the effect of it was to render the latter useless, provided such act was not done unnecessarily or maliciously. In that case the parties were regarded in the same light as adjacent owners, and the rule was applied that the defendant might lawfully dig on her own land, though the effect was to cut off the water from the plaintiff's spring by percolation. But there was no grant in that case of *any particular supply* of water from the spring or from the defendant's lands. The grant was merely of the right to the spring and secured the plaintiff no greater rights than such as he would have had if he had owned the land on which it was situated." Thus it clearly appears that that case was unlike the one of *Johnstown* v. *Veghtes* (*supra*). The latter case was more like the one now before us. In concluding the opinion it was said: " In this case the grant was of the use of the water which, at the time of the grant, was being conducted from the spring, and the intent was to secure the continuance of that supply of water, it being essential to the operation of the cheese factory conveyed." In the case in hand, as we have already intimated, the grant was of the use of a specified quantity of water to be taken from a specified spring, and the acts and efforts of the plaintiff were in the direction well calculated to secure to him the water granted, the quantity granted from the site mentioned in the grant, from the spring described in the grant.

It is claimed by the learned counsel for the respondent that the burden imposed cannot be made greater than it was at the time of the execution of the conveyance, and he has called our attention to *Roberts* v. *Roberts* (7 Lans., 55; S. C., affirmed, 55 N. Y., 275). We do not understand that this is in conflict with the views already expressed, for, as we understand it, it is held " that the burden imposed cannot be made greater than it was at the time of the con-

veyance." According to the evidence, the plaintiff's right secured by the grant and the privileges of the easement mentioned therein, are valuable and important and are entitled to the protection of a court of equity. The foregoing views lead to the conclusion that the result at the Special Term was erroneous, and the judgment must be reversed and a new trial ordered, with costs to abide the event.

MARTIN and MERWIN, JJ., concurred.

Judgment reversed and a new trial ordered, with costs to abide the event.