## LATHROP v. LYTLE.

(Supreme Court, Equity Term, Erie County.   December, 1913.)

1. EASEMENTS (§§ 27, 34*)—EXTINGUISHMENT.
   Where the owner of the dominant tenement acquires the servient tenement, the easement is extinguished, and will not arise upon severance of ownership.
   
   [Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 75, 86, 87; Dec. Dig. §§ 27, 34.*]

2. EASEMENTS (§ 16*)—CONVEYANCES.
   On the principle that a vendor cannot derogate from his grant, all those visible easements which are necessary to the enjoyment of the property conveyed pass by implication when the dominant portion of an estate is conveyed, but where the servient portion of an estate is conveyed, a reservation of the easements should be made in the deed, and it will be implied only on strict necessity.
   
   [Ed. Note.—For other cases, see Easements, Cent. Dig. § 43; Dec. Dig. § 16.*]

3. EASEMENTS (§ 16*)—RESERVATION BY IMPLICATION.
   Where a farm was supplied with water from a spring on the land of an adjacent proprietor, being conveyed in an aqueduct, and the owner of the dominant tenement acquired the servient tenement, no easement of necessity will be by implication reserved, where the servient tenement was later conveyed without reservation, and it appeared water might be obtained from another spring on the dominant estate.
   
   [Ed. Note.—For other cases, see Easements, Cent. Dig. § 43; Dec. Dig. § 16.*]

4. WATERS AND WATER COURSES (§ 100*)—RIGHTS OF RIPARIAN PROPRIETOR.
   A lower riparian proprietor, while entitled to have the waters, which flow from a spring in a natural water course, cross his land, cannot go upon his neighbor's land to repair the spring or water course.
   
   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 109; Dec. Dig. § 100.*]

5. STIPULATIONS (§ 19*)—EFFECT OF STIPULATIONS.
   Where a stipulation was not brought to the attention of the court at trial and its terms were not clearly established, it will be disregarded when first referred to in a brief filed in the trial court.
   
   [Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 55–63; Dec. Dig. § 19.*]

6. EASEMENTS (§ 7*)—PRESCRIPTION.
   Twenty years' unexplained use of an easement will be presumed to be under a claim of right adverse to the owner, and will create an easement by prescription; the burden being on the owner of the servient estate, where such a user is established, to show that it was not adverse.
   
   [Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 16–19, 27, 33; Dec. Dig. § 7.*]

Action by Chase Lathrop against George A. Lytle.   Judgment for plaintiff.

Charles H. Addington, of East Aurora (Reginald F. Penton, of Buffalo, of counsel), for plaintiff.

William B. Reading, of Buffalo (H. B. Butterfield, of Buffalo, of counsel), for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BISSELL, J. This action is brought to obtain an injunction to restrain the defendant from interfering with the plaintiff's alleged right to take water from a spring on the land of the defendant.

There is no dispute as to the important facts, which, briefly stated, are as follows: In the year 1844, Paul B. Lathrop, father of the plaintiff, came into title and possession of a farm, hereinafter called the Lathrop farm, situated in the town of Elma, county of Erie. In 1869 one John Bragg purchased the farm, hereinafter called the Bragg farm, lying next south and adjoining the Lathrop farm. The spring, about which this controversy arose, is situated on the Bragg farm, about 10 rods south of the division line of the two farms. Formerly it flowed by a natural channel in a northerly direction from the Bragg farm and across the Lathrop tract. In 1872, in accordance with some agreement, the exact terms of which are not available, entered into between John Bragg and Paul B. Lathrop, the latter cleaned out and walled up the spring, and laid a pipe conducting the water to his barn on the Lathrop farm. In May, 1876, John Bragg conveyed his land to Paul B. Lathrop, and the latter became the owner of the tract, including both the Lathrop and Bragg farms, and continued in possession of the same until April 19, 1892. On that date he conveyed the Bragg farm to his daughter, Grace L. Kinney, who remained in possession until her death in 1904. On April 1, 1912, the executors of Grace L. Kinney conveyed the Bragg farm to the defendant in this action. On April 22, 1893, Paul B. Lathrop conveyed the Lathrop farm to his son, Chase Lathrop, the plaintiff in this action.

The contentions of the plaintiff are as follows: First. The agreement between John Bragg and Paul B. Lathrop created an easement which was confirmed by Lathrop's purchase of the Bragg farm. Second. After the said purchase, quasi easement existed between the two grants of land in favor of the Lathrop farm, and Grace L. Kinney took the Bragg farm subject to that burden. Third. A new channel has been created which cannot now be disturbed. Fourth. Prescription. We will take up the propositions in their order.

[1] The agreement above set forth gave the right to the plaintiff's grantor to clean out the spring and lay pipe to conduct the water to his farm. It does not appear, however, that there was any grant. The plaintiff in his brief, says:

"The terms of the agreement * * * referred to in the complaint, rest in obscurity."

The mere fact that an agreement existed does not prove that the plaintiff's grantor acquired an easement. Such a fact, on the contrary, would indicate that whatever rights he had rested upon license. Even if the existence of such easement were proved, however, the purchase of the Bragg farm in 1876 would have extinguished any such right by a merger of the titles.

[2, 3] The second contention of the plaintiff is a more serious one. On the principle that a vendor will not be allowed to derogate from his grant, all those visible easements which are necessary to the enjoyment of the property conveyed will be deemed to pass by implication. A dif-

ferent rule, however, is applicable against the vendee where the servient portion has been conveyed. A reservation should be expressly stated in the deed. It will be implied only on strict necessity. The distinction between implied grants and implied reservations is clearly stated by Vann, J., in Wells v. Garbutt, 132 N. Y. 430–435, 30 N. E. 978, 980:

"Where the owner of two parcels of land conveys one by an absolute and unqualified deed, we think that an easement will be implied, in favor of the land retained by the grantor and against the land conveyed to his grantee, only in case the burden is apparent, continuous, and *strictly necessary* for the enjoyment of the former."

Some of the cases do not sustain this distinction. Lampman v. Milks, 21 N. Y. 505, cited by the plaintiff, contains perhaps the strongest statement of the other view. In that case Selden, J., after stating the rule governing implied grants, says:

"This is not a rule for the benefit of purchasers only, but is entirely reciprocal. Hence if, instead of a benefit conferred, a burden had been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with a servitude upon it. The parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts."

This was entirely dictum, however, as the case of Lampman v. Milks was one of implied grant and not implied reservation, as is the case at bar. No case has been cited, nor have we been able to find any case, of implied grant decided upon the rule laid down in Lampman v. Milks, supra.

There is no claim that the deed to Mrs. Kinney, the defendant's grantor, contains any express reservation of any right in the spring. If the plaintiff is to succeed in his contention, therefore, it must appear that at the time of the conveyance to Mrs. Kinney her grantor was enjoying easement in the land conveyed that was "apparent, continuous, and strictly necessary." That the easement was apparent and continuous is unquestioned. We do not think, however, that it meets the requirement of strict necessity. In discussing what constitutes necessity, Vann, J., in Wells v. Garbutt, supra, says:

"While absolute physical necessity need not be shown, as in the case of landlocked premises, or the support of a wall, there must be a reasonable necessity, as distinguished from mere convenience."

Also in a recent decision, Hill v. Bernheimer, 78 Misc. Rep. 472, 140 N. Y. Supp. 35, where this question is disposed of on analogous facts, Page, J., says:

"In applying this rule the courts hold that where the property can be put to all of its reasonable uses without imposing any burden on the adjoining premises, there is no necessity."

There is no doubt that it would be a great convenience for the plaintiff to continue the use of the spring on the defendant's property, but we do not think, from the facts before us, it amounts to a necessity. The plaintiff himself testified that there was a spring "there now, about 100, or over 100 rods from the buildings, downgrade." He

further testified: "We drawed water from there when the wells at the house gave out." This would indicate that there is a spring within little over a hundred rods from the plaintiff's buildings, and that it provides an unfailing supply of water. Its situation is downgrade from the buildings, and a windmill or some other form of pumping apparatus would have to be installed, which would be a matter of expense and inconvenience, but, nevertheless, not such an insuperable difficulty as would make the use of the defendant's spring a strict necessity, at least in the absence of any facts before the court concerning the value of the farm and the income derived from it by its occupants. Three wells have been dug on the farm; two of them before the birth of the plaintiff and the other at some time beyond his recollection. The plaintiff is 63 years old, so it is apparent that no modern methods have ever been used in an effort to reach a constant supply of water. In fact he testified that no wells had ever been drilled. In this connection it is, perhaps, worthy of note that the wells which were at one time in use appear to have yielded an adequate supply of water in all except dry seasons.

It must be pointed out that no facts relative to the income from the farm have been laid before the court, nor has any estimate of the expense of installing a pumping apparatus, or other methods of arriving at water on the farm of the plaintiff, been produced. No intelligent conclusion, therefore, can be reached as to the relation between the income from the farm and the expense of supplying it with water within its own confines.

In view of all these facts we cannot conclude that the easement claimed by the plaintiff is necessary within the meaning of the rule laid down above.

[4] In his third contention the plaintiff seems to treat the spring as a water course. It is scarcely to be doubted that the plaintiff has a right to have the stream cross the division line at the same point that it has crossed it for the last 40 years. These rights doubtless belong to the plaintiff as a lower riparian proprietor, not as the owner of an easement to take water from his neighbor's premises. They do not, of course, include any rights to the plaintiff to go upon the land of the defendant to repair, or for any purpose.

[5, 6] Lastly, the plaintiff relies on prescription. The defendant's predecessor in title, Mrs. Kinney, came into possession of the Bragg farm by deed dated April 19, 1892. On April 10, 1912, the following letter was written:

"East Aurora, N. Y., April 10th, 1912.

"Mr. Chase Lathrop, Willink, N. Y.—Dear Sir: In compliance to an agreement entered into December 1st, 1911, between Mr. Jireh Kinney and with you, as executors of the estate of the late Grace L. Kinney, and myself, title to the farm which adjoins you on the south was transferred to me April 1st, 1912.

"I find upon the farm a certain concrete structure and a line of pipe placed there, I am informed during your term as tenant.

"My deed makes no reservation of the land occupied by these structures, and, while I am perfectly willing to give you a lease thereof, business principles require that one be executed or the structures removed.

"Without any feeling of animus upon my part, you are therefore notified to

execute a lease for the land so occupied, or remove the structures from the farm within five days.

"Very truly yours,                                          Geo. A. Lytle."

The "structures" referred to in this letter were not removed and have not been disturbed by either party. The defendant states in his brief that:

"Performance of the conditions in the said letter was suspended without prejudice to the rights of either party, from time to time, until the summons and complaint herein were served."

The period beginning with Mrs. Kinney's deed, April 19, 1892, and ending with the date of the above letter, April 10, 1912, is 9 days short of 20 years. The importance of this stipulation is therefore apparent. Apart from this reference in the brief of the defendant, it has not been brought to the attention of the court. Not only are its precise terms unknown, but its existence has not been established. It is not therefore properly before the court and must be disregarded.

The plaintiff has alleged and proved that he and his grantor, since the separation of the two farms by deed to Mrs. Kinney, April 19, 1892, to the beginning of this action by service of a summons July 26, 1912, have continuously maintained a structure over the spring, and a pipe line conducting the water therefrom to the barn on his premises. Use of the easement for 20 years, unexplained, will be presumed to be under claim of right adverse to the owner. This user having been established, it was incumbent on the defendant to show that such user was not adverse to the owners. In the absence of such rebuttal a grant is presumed. Nicholls v. Wentworth, 100 N. Y. 455, 3 N. E. 482; Ward v. Warren, 82 N. Y. 265.

On this ground, therefore, judgment must be given for the plaintiff.